IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSICA VANICEK, Personal Representative of the Estate of Ryan T. Vanicek; THOMAS VANICEK and KAREN VANICEK, Individually, and Parents of the Deceased, Ryan T. Vanicek; and TAMARA WITZEL, step-daughter of the Deceased, Ryan T. Vanicek; <br><br> Plaintiffs, <br><br> and <br><br> LYMAN-RICHEY CORPORATION, D/B/A CENTRAL SAND AND GRAVEL COMPANY, <br><br> Plaintiff-Intervenor, <br><br> vs. <br><br> KENNETH E. KRATT and SANDAIR CORPORATION, <br><br> Defendants. | 8:21CV49 <br><br> ORDER |

This matter comes before the court on the Motion for Leave to Amend Complaint (Filing No. 85) filed by Plaintiffs. Plaintiffs to seek to amend their amended complaint to reassert their claim for punitive damages due to newly obtained evidence. Plaintiffs also seek to add an individual cause of action for negligent infliction of emotional distress asserted by Jessica Vanicek, the decedent's wife, and to assert a claim for "bad faith on the part of Defendants, their agents and/or representatives, and/or National Fire & Marine Insurance and Gemini Insurance Company." (Filing No. 85). Defendants oppose the motion because the amendments are futile and because Plaintiffs unduly delayed in seeking to add the proposed amendments. (Filing No. 87 at p. 2). For the following reasons, the Court will deny Plaintiffs' motion.

## BACKGROUND

This is a diversity action filed by the estate and next of kin of Ryan Vanicek. Ryan was a Nebraska resident and citizen, as are his surviving next of kin. Ryan was killed on September 20, 2019, on I-80 near Buffalo County, Nebraska, when his Chevrolet Silverado was struck by a tractor

trailer driven by defendant, Kenneth Kratt. Kratt is a resident of California and was driving a tractor trailer in the course and scope of his employment with defendant, Sandair Corporation, a California corporation. Plaintiffs allege Ryan and other traffic had slowed and/or stopped for construction on I-80 when Kratt collided with Ryan's vehicle, resulting in the death of three people, including Ryan. (Filing No. 30).

Plaintiffs commenced this action on February 12, 2021. (Filing No. 1). Plaintiffs moved to amend their complaint on April 23, 2021, (Filing No. 20) and then again on May 6, 2021 (Filing No. 26). The Court granted Plaintiffs' second motion to amend on May 29, 2021, (Filing No. 29), and denied the first motion to amend as moot. On May 30, 2021, Plaintiffs filed an amended complaint containing a wrongful death claim asserted by Jessica Vanicek, Ryan's wife and personal representative of his estate, and negligent infliction of emotion distress (NIED) claims by Thomas and Karen Vanicek, Ryan's parents, and by Tamara Witzel, Ryan's step-daughter. Plaintiffs sought a variety of damages, including punitive or exemplary damages under California law. (Filing No. 30).

Defendants moved to strike Plaintiffs' references to punitive damages because Nebraska law prohibits them. (Filing No. 32). On September 15, 2021, the undersigned magistrate judge granted Defendants' motion and struck Plaintiffs' prayer for punitive damages and references to California law. (Filing No. 34). The undersigned magistrate judge determined Nebraska has the most significant relationship to Plaintiffs' claims after weighing the requisite factors in the Restatement (Second) of Conflict of Laws § 145 (1971), but included a footnote in the Order providing that Plaintiffs may seek reassertion of punitive damages "in the unlikely event discovery does provide them with additional evidence establishing a legitimate basis for California law to apply." (Filing No. 34 at p. 5 n. 1). Plaintiffs timely objected to the order striking punitive damages. (Filing No. 36). On November 19, 2021, United States Court District Judge Brian C. Buescher overruled Plaintiffs' objections, finding the undersigned magistrate judge "properly weighed the Restatement factors" in reaching the not-clearly-erroneous conclusion that Nebraska has the most significant relationship to the case. (Filing No. 47 at p. 5).

Following those rulings, the parties engaged in written discovery and took depositions over the course of approximately a year. The Court's intervention was requested on several occasions to resolve various disputes over the scope of discovery and depositions in light of its rulings

regarding punitive damages and Defendants' admission of liability. See Filing Nos. 50, 52, 65, 77.

On August 24, 2022, Defendants moved for partial summary judgment on Thomas, Karen, and Tamara's NIED claims contained in the amended complaint. (Filing No. 74). On October 25, 2022, the Court granted Defendants' motion and dismissed those plaintiffs' NIED claims with prejudice because they failed to establish a jury question on whether their emotional distress "is so severe that no reasonable person could be expected to endure it." (Filing No. 86 at pp. 34-43). The Court denied Plaintiffs' motion for reconsideration of its summary judgment order on December 9, 2022. (Filing No. 93).

Plaintiffs filed the instant motion for leave to amend on October 21, 2022,[1] four days before the Court ruled on Defendants' motion for summary judgment. (Filing No. 85).[2] Plaintiffs' proposed second amended complaint contains a "Punitive Damages Cause of Action" and a "Bad Faith Cause of Action," which alleges Defendants and their insurers "breached the common law duty of good faith and fair dealing owed to Plaintiff by refusing, denying, and/or delaying payments on this claim when Defendant knew or should have known that their liability to Plaintiffs was clear." (Filing No. 85 at pp. 10-11). The proposed second amended complaint contains a cause of action for wrongful death brought by Jessica, as the personal representative of Ryan's estate, and for the first time, a separate cause of action for NIED by Jessica. The proposed amended complaint also includes NIED claims by Thomas, Karen, and Tamara.

## ANALYSIS

Federal Rule of Civil Procedure 15 provides that the Court should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a). Nevertheless, a party does not have an absolute right to amend, and "[a] district court may deny leave to amend if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or

---

[1] The operative case progression order set October 21, 2022, as the deadline for moving to amend pleadings, so Plaintiffs' motion was timely filed. (Filing No. 82).

[2] Plaintiffs did not separately attach to the motion an unsigned copy of the proposed amended complaint, nor did they clearly identify the proposed amendments. See NECivR. 15.1(a) ("A party who moves for leave to amend a pleading . . . must file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments."). Nevertheless, the Court will not consider Plaintiffs' technical noncompliance with the local rules dispositive of the motion.

futility of the amendment." *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (internal quotation and citation omitted). The court has substantial discretion in ruling on a motion for leave to amend under Rule 15(a)(2). *Wintermute v. Kansas Bankers Sur. Co.*, 630 F.3d 1063, 1067 (8th Cir. 2011). Whether to grant a motion for leave to amend is within the sound discretion of the district court. *Popoalii*, 512 F.3d at 497.

Defendants oppose the proposed amendments because all three new proposed claims are futile either because this Court has already ruled on the claims and/or because there is no legal or factual support for the amendments. Defendants further argue Plaintiffs unduly delayed in adding such claims because they are based upon information that Plaintiffs have known for years. Finally, Defendants argue Plaintiffs' request to add three new claims at this time would unfairly prejudice Defendants. (Filing No. 87 at p. 2). The Court agrees with Defendants on all points.

### I. Punitive Damages

Plaintiffs seek to add a "claim" for punitive damages, asserting evidence gathered during discovery shows California has a stronger interest than Nebraska on the issue of punitive damages. Plaintiffs point to Kratt's testimony during his criminal trial—over a year ago—as well as testimony regarding the total number of miles driven by Kratt and Sandair on a monthly basis, as new evidence showing the Restatement factors weigh in favor of application of California law on the issue of punitive damages. However, Plaintiffs' evidence is not new, and their brief largely rehashes the same arguments they made when the Court first considered the issue of striking Plaintiffs' prayer for punitive damages. (Filing No. 85-1 at pp. 6-9). Plaintiffs are instead attempting to relitigate the same issue using the same legal arguments advanced by their earlier briefs, which the undersigned magistrate judge and Judge Buescher have repeatedly addressed by prior orders. (See, e.g., Filing No. 34; Filing No. 47). Plaintiffs have not pointed to compelling new evidence showing that the weight of the Restatement factors should be tipped in favor of California law on the issue of punitive damages.

Plaintiffs further argue Defendants failed to respond to Plaintiffs' requests for admissions (RFA), thereby admitting that California law applies on the issue of punitive damages. (Filing No. 85-1 at p. 20). Defendants counter that Plaintiffs served the RFAs upon Defendants on February 27, 2021, before the parties met and conferred as required by Rule 26(f) of the Federal Rules of Civil Procedure, and therefore the RFAs are a nullity. (Filing No. 85-4 at p. 27); see Fed. R. Civ.

4

P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . ."). Plaintiffs reply that Defendants did not respond to the RFAs even after the parties' Rule 26(f) conference on October 25, 2021, and thus the RFAs are deemed admitted. (Filing No. 89 at p. 11).

Rule 36(a)(1) provides that "[a] party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either[.]" Fed. R. Civ. P. 36(a)(1). Plaintiffs' RFA 24 asks Defendants to "ADMIT that because of the particularly egregious an oppressive conduct of Defendant KRATT and willful disregard for the safety of others – it gives rise to a level of oppressive, reckless, and malicious behavior, so that Plaintiffs are also entitled to an award of punitive damages as against each of the Defendants named herein under California law." (Filing No. 85-1 at p. 15). Regardless of the timeliness of Plaintiffs' service of RFAs or the timeliness of Defendants' responses, Plaintiffs' type of RFA is fundamentally flawed because it does not seek an admission of fact or the application of a fact to the law – it improperly calls for a conclusion of law. *Lakehead Pipe Line Co. v. American Home Assur. Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997). A request for admission which involves a pure matter of law, that is, requests for admissions of law which are related to the facts of the case, are considered to be inappropriate. See *id.* Therefore, even if Defendants did fail to timely respond to Plaintiffs' RFAs, Defendants cannot "admit" California law applies to this action because that is a conclusion of law and not an appropriate inquiry for a Request for Admission.

Because Plaintiffs have not demonstrated new evidence demonstrating that California law should apply to the issue of punitive damages, adding a "claim" for punitive damages at this juncture would be futile, and the Court will therefore deny Plaintiffs leave to file an amended complaint adding a claim for punitive damages.

## II. Bad Faith

Plaintiffs also seek to add a claim for bad faith because "Defendants, through their agents and insurers and individually, failed to offer, in good faith, a reasonable settlement particularly in accordance with their insurance coverage limits." (Filing No. 85-1 at p. 20). Plaintiffs cite to *Ruwe v. Farmers Mutual United Insurance*, 469 N.W.2d 129, 134 (Neb. 1991) and Neb. Rev. Stat. § 44-1540 et. seq., which "outlines guidelines of insurers' required and expected conduct," and

assert "Nebraska case law clearly identifies requirements for insurers to determine and reasonably pay all valid claims, according to policy limits, in good faith." (Filing No. 85-1 at p. 21).

Defendants oppose this amendment as futile. "An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014). "To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff 'is entitled to relief,' Fed. R. Civ. P. 8(a)(2), by alleging 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hillesheim*, 897 F.3d at 955 (quoting *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc)).

Nebraska law recognizes two types of bad faith claims against an insurer: a traditional third-party bad faith claim arising when an insurer wrongfully fails to settle a claim brought by a third party against an insured; and a first-party bad faith action based upon allegations that the insurer, in bad faith, refused to settle with its own policyholder insured, who thereby suffered some type of direct loss. *Braesch v. Union Ins. Co.*, 464 N.W.2d 769, 776 (Neb. 1991) (citations omitted), *disapproved of on other grounds by Wortman v. Unger*, 578 N.W.2d 413, 417 (Neb. 1998). "The implied covenant of good faith and fair dealing that Nebraska law imposes on insurers 'is dependent upon a contractual relationship between the [policyholder] and the insurer.'" *Millard Gutter Co. v. Shelter Mut. Ins. Co.*, 980 N.W.2d 420, 434 (Neb. 2022). "'[T]he theory underlying the tort of bad faith settlement of a first-party claim is that there is an implied covenant of good faith and fair dealing'" that is "'dependent upon a contractual relationship between the plaintiff and the insurer.'" *Metro Renovation, Inc. v. Allied Grp., Inc.*, 389 F. Supp. 2d 1131, 1135 (D. Neb. 2005) (quoting *Braesch*, 464 N.W.2d at 776). "In contrast, the 'theory underlying the liability' in a third-party case is predicated upon 'a fiduciary relationship between the insured and insurer[.]'" *Id.* (quoting *Braesch*, 464 N.W.2d at 772-773).

The Court agrees Plaintiffs' proposed claim for bad faith is futile and would not survive a motion to dismiss under Rule 12(b)(6). First, Nebraska only recognizes claims for bad faith against an *insurer*. The only defendants in this action are the Sandair Corporation and Kenneth Kratt—neither of which are insurers. Plaintiffs also lack standing to bring a "first-party" bad faith action because Plaintiffs are not policyholders with a contract with Defendants and/or Defendants' insurer. See *Millard Gutter*, 980 N.W.2d at 435 ("[T]he tort of first-party bad faith does not extend

6

to nonpolicyholder beneficiaries—even those who claim to have been harmed by an insurer's failure to settle with them—because nonpolicyholders lack a contractual relationship with the insurer."). Plaintiffs similarly lack standing to bring a "third party" bad faith action because they are not policyholders. See *Braesch*, 464 N.W.2d at 776 ("[O]nly (1) an injured policyholder who is also a 'covered person' or (2) a policyholder who is also a beneficiary may bring a cause of action in tort against the policyholder's insurer for failure to settle the policyholder's insurance claim."). As such, Plaintiffs' claim for bad faith settlement against Defendants would not survive a motion to dismiss, and is therefore futile.

### III. Jessica Vanicek's NIED Claim

Finally, Plaintiffs seek to add an NIED claim brought by Jessica, the decedent's wife. Defendants oppose the amendment as futile, unduly delayed, and unfairly prejudicial. The Court agrees that Jessica unduly delayed in seeking to add her claim for NIED and that Defendants would be unfairly prejudiced by the late amendment.[3]

"Undue delay" is generally understood to occur "when a party waits until the eleventh hour of its case to file its motion to amend." *Nitride Semiconductors Co. v. Digi-Key Corp.*, No. 17-CV-4359 (JRT/LIB), 2020 WL 13016670, at *3 (D. Minn. Aug. 10, 2020) (internal quotation marks omitted). But, "[d]elay alone is not a reason in and of itself to deny leave to amend; the delay must have resulted in unfair prejudice to the party opposing amendment. . . . The burden of proof of prejudice is on the party opposing the amendment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (quoting *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987)) (internal citation omitted). "Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend." *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000).

First, there is no question Plaintiffs delayed in seeking to add Jessica's NIED claim because the factual basis for the claim has *long* been known to Plaintiffs. Ryan's accident occurred in September 2019, Jessica was evaluated by Plaintiffs' retained psychologist in June 2020, and her psychological evaluation report was prepared on August 27, 2020. (Filing No. 87-1). On May 6, 2021, Plaintiffs moved the Court for leave to amend their complaint to add similar NIED claims

---

[3] Because the Court finds Plaintiffs should be denied leave to amend on this basis, it will not reach Defendants' separate argument that Jessica's NIED claim is futile.

7

for Thomas, Karen, and Tamara, but did not seek to add an NIED claim for Jessica. (Filing No. 26). Plaintiffs have not attempted to explain why they did not seek to add Jessica's claim NIED in the earlier motions to amend. And, the Court finds Plaintiffs' unexplained and undue delay would cause unfair prejudice to Defendants. Plaintiffs' motion to add Jessica's claim for NIED comes nearly a month after written discovery closed on September 23, 2022, and was filed just days before the Court granted summary judgment in favor of Defendants on the NIED claims advanced by Thomas, Karen, and Tamara. (Filing No. 82). Adding a new NIED claim at this point during the case would necessarily result in additional discovery and delay the case. As such, the Court finds leave to amend to add a belated NIED claim should be denied.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Leave to Amend Complaint (Filing No. 85) is denied.

Dated this 22nd day of February, 2023.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge