IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSICA VANICEK, Personal Representative of the Estate of Ryan T. Vanicek;<br><br>Plaintiffs,<br><br>And<br><br>LYMAN-RICHEY CORPORATION, d/b/a CENTRAL SAND AND GRAVEL COMPANY,<br><br>Plaintiff-Intervenor<br><br>vs.<br><br>KENNETH E. KRATT, and SANDAIR CORPORATION,<br><br>Defendants. | 8:21-CV-49<br><br>MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

This case arises out of the untimely death of Ryan Vanicek. Filing 86 at 1. Kenneth E. Kratt and Sandair Corporation (collectively Defendants) have admitted they are liable for Vanicek's death. Filing 86 at 3 (citing Filing 35 at 4 (¶18) and Filing 35 at 5 (¶27)). However, the parties dispute the damages that are owed and may be recoverable. *See generally* Filing 114; Filing 124. This matter is before the Court on Defendants' Motion for Partial Summary Judgment. Filing 114.[1] Defendants seek partial summary judgment on Plaintiff's claims for "pre-impact fear and apprehension and post-impact conscious pain and suffering." Filing 114 at 1. For the reasons explained in this Order, the Court denies Defendants' Motion, Filing 114, in its entirety.[2]

---

[1] Defendants also filed a "Motion to Strike" some of Plaintiff's experts, which will be addressed in a separate order. *See* Filing 109.

[2] Throughout this Order, the Court's references to "Vanicek" are to the decedent, Ryan Vanicek. The only remaining plaintiff in this case is Vanicek's Estate. The Court will refer to the Estate as either "Plaintiff" or "it."

1

## I. PRELIMINARY MATTERS

Before discussing the merits of the parties' positions, the Court must first address a preliminary matter. This Court previously addressed Plaintiff's Counsel's failure to abide by its local rules in responding to a different motion for partial summary judgment. *See* Filing 86 at 2– 3; Filing 93 at 7–8. The last time Defendants filed such a motion, Plaintiff's Counsel failed to controvert the Defendants' properly referenced material facts as required by the local rules that were in effect at the time. *See* Filing 86 at 2–3. The Court made a point of noting that Plaintiff's Counsel's "noncompliance with this Court's rules on summary judgment carries consequences." Filing 86 at 3. As such, the Court "deem[ed] all uncontroverted statements of material fact set forth in Defendants' opening brief to be admitted by" Plaintiff. Filing 86 at 2. Displeased with the outcome of that motion, Plaintiff's Counsel moved for reconsideration. *See* Filing 93 at 1 (citing Filing 88). The Court denied this request for reconsideration, and in so doing stressed Plaintiff's prior failure to comply with this Court's local rules. *See* Filing 93 at 7 ("The Court will not entertain a motion for reconsideration where the moving party failed to comply with governing local rules the first time around").

The Court has now been presented with another Motion for Partial Summary Judgment filed by Defendants. Filing 114. As before, Defendants properly complied with their obligations under the prevailing local rules that govern the requirements for such motions. *See generally* NECivR 56.1.[3] Along with their Motion, Defendants filed a supporting brief and a separate

---

[3] The Court notes that its local rules were updated effective December 1, 2022. These updated rules govern the current matter because the present Motion for Partial Summary Judgment, Filing 114, was filed on April 24, 2023. *See Smith v. City of Grand Island*, No. 18:19CV473, 2023 WL 361937, at *1 n.1 (D. Neb. Jan. 23, 2023) (acknowledging that the local rules for the District of Nebraska had been amended effective December 1, 2022, and applying the version of the local rules that was "in effect at the time Defendants filed their Motion for Summary Judgment"). Therefore, unless otherwise specified, references to this Court's local rules in this Order are to the rules that took effect on December 1, 2022.

statement of material facts consisting of short, numbered paragraphs. *See* NECivR 56.1(a)(1)–(2); Filing 114 (Defendants' Motion), Filing 115 (Defendants' Statement of Material Facts), Filing 116 (Defendants' Brief); Filing 117 (Defendants' Index and Evidentiary Materials). Therefore, pursuant to this Court's local rules, Plaintiff was obliged to file "a separate statement of concise responses to the moving party's statement of material facts." NECivR56.1(b)(1)(A). The Court's local rules further require that "[e]ach response must clearly state that the asserted facts is: (i) undisputed, (ii) disputed, or (iii) undisputed in part and disputed in part." NECivR56.1(b)(1)(B).

Despite this Court's prior, repeated admonishments for failing to follow the local rules governing summary judgment, Plaintiff's Counsel still did not follow this Court's rules. *See* Filing 124 at 1–10. As such, the Court will—yet again—consider all properly referenced material facts in Defendants' Statement of Facts, Filing 115, to be considered admitted because they were not properly controverted by Plaintiff in accordance with the clear dictates of the Court's local rules. *See* NECivR 56.1(b)(1)(B); *R.A.D. Servs. LLC v. State Farm Fire & Cas. Co.*, 60 F.4th 408, 412 (8th Cir. 2023) (per curium) (concluding that the district court did not abuse its discretion by striking exhibits filed in violation of the applicable version of NECivR. 56.1 and that without these exhibits "the district court properly accepted the [moving party's] facts as admitted, in accordance with the local rules"); *see also Carter v. Muldoon*, No. 8:17CV319, 2018 WL 10228384, at *1 (D. Neb. Dec. 19, 2018) (treating the defendants' statement of facts as undisputed where the plaintiff "made no attempt to respond to the Defendants' statement of facts in the manner required by NECivR 56.1(b)(1)"), *aff'd*, 780 F. App'x 392 (8th Cir. 2019)).

Given that Counsel for Plaintiff has repeatedly violated this Court's local rules—and especially because he has been previously rebuked for doing so in this same case—it is necessary to take further measures. The Court will order Counsel for Plaintiff to show cause as to why he

3

should not be sanctioned for his demonstrated unwillingness to abide by this Court's local rules in responding to Motions for Summary Judgment. The Court will set forth additional details regarding what it expects Counsel for Plaintiff to address in the decretal paragraph of this Order. Having addressed this preliminary matter, the Court now turns to the merits of the Motion.

## II. BACKGROUND

### A. Factual Background

As the Court recounted in a prior Order, Vanicek "died on September 20, 2019, while driving a Chevrolet Silverado on Interstate 80 when a Peterbilt tractor with a trailer collided with [his] vehicle." Filing 86 at 3. After the semi-truck hit Vanicek's pickup truck, the pickup truck rotated and came to rest facing westward. Filing 126 at 4. Vanicek's pickup truck "started on fire and was completely destroyed by the fire." Filing 126 at 5. William Dettman, an off-duty police officer, pulled Vanicek from the vehicle after it came to a rest in the median. Filing 115 at 1 (¶2) (citing Filing 117-1); Filing 126 at 5. Dettman observed that Vanicek "was not moving and his eyes were never open." Filing 117-1 at 2. Dettman assisted in caring for Vanicek until paramedics arrived. Filing 117-1 at 2. According to an affidavit he completed on January 11, 2023, Dettman averred that he was "unaware of any observations that would show [Vanicek] was conscious at any time [Dettman] was at the scene." Filing 117-1 at 2.

"Gibbon[s] Fire & Rescue arrived at 3:15 p.m., 11-minutes after they were notified." Filing 115 at 2 (¶5) (citing Filing 117-4 at 7). Gibbons Fire & Rescue "documented that [Vanicek] was unconscious" and scored a "3" on the Glasgow Coma Scale. Filing 17-4 at 7. The Glasgow Coma Scale "evaluates different responses of the body and then that scale is used to determine level of consciousness." Filing 117-4 at 6. It ranges from 3 to 15 with 3 representing the least degree of consciousness. *See* Filing 117-4 at 6. Steven Rasmussen was one of the Emergency Medical Technicians who arrived on the scene with Gibbons Fire & Rescue. Filing 115 at 2 (¶7); Filing

4

117-2 at 1–2. He cared for Vanicek "until life flight arrived." Filing 117-2 at 2. According to Rasmussen, Vanicek was unconscious throughout the entire time that Rasmussen was at the scene. Filing 117-2 at 2. Sydney Myer was another Emergency Medical Technician and member of the Gibbons Fire & Rescue team that responded to the collision. Filing 117-3 at 1–2. She likewise observed that Vanicek was unconscious during the entire time she was at the scene. Filing 117-3 at 2. Myer also stated that Vanicek "did not show any pain response." Filing 117-3 at 2. She noted, for example, that although Vanicek had a laceration on his face, he did not exhibit a pain response when they "placed a mask on him that pressured his laceration[.]" Filing 117-3 at 2. According to Myer, this "would normally warrant a pain response from a conscious patient." Filing 117-3 at 2.

Good Samaritan Emergency Medical Services (Good Samaritan) responded to the scene at 3:30 p.m.—approximately 15 minutes after Gibbons Fire & Rescue first arrived. *See* Filing 117-4 at 7. Good Samaritan's records documented that Vanicek was "neuro unresponsive" and had an injury to his head "with loss of consciousness[.]" Filing 117-4 at 8. Their records also reported that Vanicek had no eye movement, had no verbal, vocal, or motor response, and scored a "3" on the Glasgow Coma Scale. Filing 117-4 at 8. When Vanicek arrived at the hospital, his Glasgow Coma Score was measured multiple times over a period of hours. Filing 117-4 at 8. It always remained at "3." Filing 117-4 at 8. There are no records indicating that Vanicek scored anything other than a "3" on the Glasgow Coma Scale. Filing 117-4 at 8. There are also no records specifically stating that Vanicek was "conscious" at any point in time. Filing 117-4 at 8. However, Vanicek's medical records also contain a notation that says: "pupils unequal, reactive, unresponsive, combative prior to AC arrival[.]" Filing 124-2 at 21.[4] Unfortunately, Vanicek passed away at the hospital mere hours later. *See* Filing 124-2 at 30–32. According to Dr. Chester Gwin—a forensic pathologist

---

[4] The Court understands "AC" to be shorthand for "air care." *See* Filing 117-4 at 7. Vanicek was taken to the hospital via "life flight." Filing 117-2 at 2.

who has been retained as an expert by Plaintiff—"a period of consciousness and resultant pain and suffering cannot be excluded." Filing 117-4 at 10. Additional facts relevant to the determination of this Motion are set forth more fully in the Court's analysis section below.

### III. LEGAL ANALYSIS

#### A. Overview of the Motion for Partial Summary Judgment

Defendants first argue that they "are entitled to summary judgment as a matter of law regarding Ryan Vanicek's pre-impact fear and apprehension because there is no evidence that [he] was even aware of the impending collision." Filing 116 at 2. Defendants argue that they are also entitled to summary judgment to the extent Plaintiff seeks damages for post-impact pain and suffering because, in their view, Plaintiff has not provided any evidence "demonstrating that Vanicek was conscious, and there is ample evidence that Vanicek was unconscious following the accident until his death." Filing 116 at 5. After setting forth the applicable standards that govern this analysis, the Court will address each of these arguments in turn.

#### B. Rule 56 Standards

On a motion for summary judgment, "a district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'" *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins.*, 536 F.3d 939, 943-44 (8th Cir. 2008)). Instead, the court must view the evidence in the light most favorable to the non-moving party and afford that party all reasonable inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649, 652 (8th Cir. 2022); *Pearson v. Logan Univ.*, 937 F.3d 1119, 1124 (8th Cir. 2019).

The parties bear specific burdens on a motion for summary judgment. "The moving party bears the burden of showing the absence of a genuine dispute." *Glover v. Bostrom*, 31 F.4th 601,

603 (8th Cir.) (citing Fed. R. Civ. P. 56(a)), *reh'g denied*, No. 20-2884, 2022 WL 1564097 (8th Cir. May 18, 2022). Thus, "'[t]he movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Mensie v. City of Little Rock*, 917 F.3d 685, 688 (8th Cir. 2019) (quoting *Torgerson*, 643 F.3d at 1042). The burden on the resisting party is heavier:

> The party opposing summary judgment must "cit[e] particular materials in the record" or show that the "materials cited do not establish the ... absence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "A mere 'scintilla of evidence' is insufficient to defeat summary judgment, and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015), quoting *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010).
>
> Similarly, if the movant has supported its motion for summary judgment, the party opposing summary judgment "may not simply rest on the hope of discrediting the movant's evidence at trial." *United States v. 3234 Washington Ave. N.*, 480 F.3d 841, 844 (8th Cir. 2007) ("3234 Washington"). Where the testimony of the movant's witnesses is critical, if the testimony is "positive, internally consistent, unequivocal, and in full accord with the documentary exhibits," "then the opposing party cannot force a trial merely to cross-examine the witness or in the hope that something might turn up at the trial." *Id.* at 845 (quotations omitted); *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016). But summary judgment is improper where specific facts "even partially" undermine the witness's credibility in a material way. *3234 Washington*, 480 F.3d at 845.

*Erickson*, 31 F.4th at 1048.

Thus, "'[t]o show a genuine dispute of material fact, a party must provide more than conjecture and speculation. Rather the nonmovant has an affirmative burden to designate specific facts creating a triable controversy.'" *Rusness*, 31 F.4th at 614 (quoting *McConnell v. Anixter, Inc.*, 944 F.3d 985, 988 (8th Cir. 2019)).

7

### C. Pre-Impact Fear and Apprehension

*1. The Parties' Arguments*

Defendants argue "there is no evidence that [Vanicek] was even aware of the impending collision" and, as such, there is no basis upon which a jury would reasonably award Plaintiff damages for pre-impact fear and apprehension. *See* Filing 116 at 2, 5. Plaintiff submits that there is sufficient evidence to go forward on this claim for damages. *See generally* Filing 124 at 10–17. Among other things, Plaintiff notes the "loud noise" that Defendants' semi-truck would have made, circumstantial evidence suggesting that Vanicek was attentive to surrounding traffic, the direction of Vanicek's vehicle, the location of Vanicek's wounds, and the conclusions of Dr. Pfeifer, Dr. Gwin, and Mr. Clark. *See* Filing 124 at 10–14.

*2. Applicable Standards*

In *Nelson v. Dolan*, the Nebraska Supreme Court held that "a decedent's estate may recover for the mental anguish a decedent consciously suffers by the apprehension and fear of impending death prior to sustaining a fatal injury." 434 N.W.2d 25, 30 (Neb. 1989); *id.* at 32. However, that same court cautioned "that the nature and amount of damages cannot be sustained by evidence which is speculative and conjectural." *Id.* at 32. In that case, the Nebraska Supreme Court considered a situation where the decedent's motorcycle locked with the defendant's automobile as they traveled 268 feet over the course of five seconds before the decedent struck a light post and was instantaneously killed. *Nelson*, 434 N.W.2d at 27. The court acknowledged "there [was] no evidence that [the decedent] said anything prior to his death revealing an awareness of his impending death[.]" *Nelson*, 434 N.W.2d at 32. Nevertheless, it concluded that there was "a basis upon which the jury certainly need not, but could, if it wished, find that [the decedent] apprehended and feared his impending death during the 5 seconds his motorcycle traveled 268 feet locked with [the defendant's] automobile before he was crushed and thus killed." *Id.*

8

*3. Discussion*

Consistent with the Nebraska Supreme Court's decision in *Nelson*, the case before this Court presents a genuine issue of material fact that must be resolved by the factfinder at trial. Defendants admit that *Nelson* is similar to the present case in some ways, but they insist that it is distinguishable in key respects. Filing 116 at 4. They argue it was "undeniable" that the decedent in *Nelson* knew of his impending death, but here "there is no evidence that Vanicek was ever aware of the oncoming vehicle at any point." Filing 116 at 4–5. While there is no direct evidence that Vanicek saw Defendants' semi-truck fast approaching, just like *Nelson* there is a circumstantial "basis upon which the jury certainly need not, but could if it wished, find that [Vanicek] apprehended and feared his impending death during the" seconds leading up to the collision. *Nelson*, 434 N.W.2d at 32.

While there might not be direct evidence to support this conclusion, such evidence is not necessary. As the Nebraska Supreme Court said in *Nelson*, "The record must provide *some basis* for the jury to make a reasonable inference that the decedent suffered conscious mental anguish." 434 N.W.2d at 32 (emphasis added); *see also Beynon v. Montgomery Cablevision Ltd. P'ship*, 718 A.2d 1161, 1185 (Md. 1998) ("Direct evidence is not necessary. What is required is evidence from which a reasonable inference could be drawn that the decedent experienced fear or fright."). Because the Court must draw all reasonable inferences in its favor, Plaintiff has met its burden of demonstrating a genuine issue of fact exists on the question of whether Vanicek was aware of the tractor-trailer prior to impact. *See Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

First, Plaintiff notes that although Vanicek's truck was struck from behind, it was not propelled directly forward—it also went to the left. *See* Filing 124 at 11; Filing 124-3 at 8. There is no dispute that the "tractor-trailer impacted Mr. Vanicek's pickup, and that, after impact, the

9

pickup rotated and came to rest facing westward." Filing 126 at 4.[5] Plaintiff argues that because Vanicek's "truck traveled to the left, across the passing lane, and came to a rest in the median" this indicates that Vanicek may have seen the tractor-trailer as it approached and therefore "turned his steering wheel to the left in the hopes of getting out of" its path. Filing 124 at 11. Defendants argue, "The only indication from the report was that the vehicle was hit squarely from behind, with no indication the vehicle was turned or turning, and that the vehicle later rotated left before coming to its final rest." Filing 127 at 3–4. However, Defendants do not dispute that that Vanicek's vehicle did, indeed, turn left. They simply posit that there "may be a number of reasons why the vehicle rotated left[.]" Filing 127 at 4.

All the same, a reasonable jury could draw the inference that the reason Plaintiff's truck rotated to the left is because Vanicek saw the vehicle approaching from behind and attempted to move out of the way by turning his vehicle toward the left lane. *See Smallwood v. Bradford*, 720 A.2d 586, 591–92 (Md. 1998) (concluding that the trial court erred in not submitting the issue of pre-impact fright damages to the jury and further noting that evidence of a decedent's "defensive maneuvering . . . provides the objective manifestation of [a] decedent's alleged emotional injury" and "reasonable assurance that the claim is not spurious") (internal quotations and citation omitted); *see also Beynon*, 718 A.2d at 1185 ("A jury reasonably could have inferred from [evidence of skidmarks] that the decedent was aware of the impending peril, that he was going to crash, and attempted an evasive maneuver to avoid it . . . This is not rank speculation"). Accordingly, evidence that Vanicek's vehicle turned to the left after impact "provide[s] some basis

---

[5]According to the Nebraska State Patrol's report, Vanicek's truck was originally facing eastward prior to impact. *See* Filing 124-3 at 2.

10

for the jury to make a reasonable inference that" Vanicek saw and appreciated the tractor-trailer before it struck his vehicle. *Nelson*, 434 N.W.2d at 32.

Second, Plaintiff points to the opinions rendered by Dr. Pfeifer, a forensic engineer with experience in accident reconstruction. *See* Filing 124 at 9, 12, 14; Filing 124-5 at 3. During his deposition, Dr. Pfeifer admitted that he did not know what Vanicek would have been doing in his vehicle or where he would have been looking in the moments leading up to the collision. Filing 117-4 at 33. However, he determined that Vanicek "would have had the opportunity to notice that the accident was possible for approximately 8.5 seconds and that it was inevitable for the final 3.4 seconds before the collision." Filing 117-4 at 33.[6] Moreover, Vanicek's vehicle was equipped with side and rearview mirrors, and Defendants do not suggest that Vanicek would have been incapable of seeing the semi-truck approach through these mirrors. *See* Filing 117-4 at 33. Although Dr. Pfeifer could not testify that Defendant was, in fact, aware of the impending collision, the point is Vanicek "could have" been aware of the collision. Collectively considered, a reasonable jury could conclude from the foregoing evidence that Vanicek saw Defendants' semi-truck speeding toward him in the seconds before the collision.[7] While a jury might ultimately conclude that he was not aware, this is a fact question that is left to the jury's determination. *See Nelson*, 434 N.W.2d at 32.

---

[6] Dr. Pfeifer reached this figure based on his conclusion that the semi-truck was traveling at a rate of 75 miles per hour while Vanicek's pickup truck was traveling at a rate of 9 miles per hour. Filing 117-4 at 32–33. Defendants dispute that Vanicek was traveling at a rate of 75 miles per hour and note that "the GPS download data indicated the tractor-trailer was traveling at a max speed of 65 miles per hour." Filing 126 at 3. Even if Defendants were correct, then that would mean Vanicek had an even larger window of opportunity from which to see the semi-truck approaching. *See* Filing 117-4 at 31 (Dr. Pfeifer explaining "If he's actually traveling slower, then he's visible and apparent that he's approaching for even a longer distance of time").

[7] Although Plaintiff has produced affidavits from Vanicek's wife, father, and mother, attesting that Vanicek was a safe driver who was always aware of his surroundings and "not a person to listen to the radio" or use a phone when he drove, the Court fails to see how such character evidence would be admissible. *See* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character trait"). As such, the Court did not consider this evidence in reaching its conclusion.

"[V]iewing all evidence and drawing all reasonable inferences in favor of" Plaintiff, *Odom*, 864 F.3d at 921, the Court finds that there is sufficient evidence in the record to withstand summary judgment on this matter. Accordingly, the Court will deny Defendants' Motion to the extent they seek judgment in their favor on Plaintiffs' claim for damages relating to pre-impact fear and apprehension.

### D. Post-Impact Conscious Pain and Suffering

#### 1. *The Parties' Arguments*

Defendants also argue that they are entitled to summary judgment to the extent Plaintiff seeks damages for post-impact pain and suffering. Filing 116 at 5. They contend that Plaintiff has not provided any evidence "demonstrating that Vanicek was conscious, and there is ample evidence that Vanicek was unconscious following the accident until his death." Filing 116 at 5. Plaintiff responds by pointing to Vanicek's medical records, which state that he was "combative" prior to air care arriving. *See* Filing 124 at 8, 16; Filing 124-2 at 21. Plaintiff also points to the testimony of Dr. Gwin, who relied on this "combative" notation in Vanicek's medical records, in determining that "a period of consciousness and resultant pain and suffering cannot be excluded." Filing 117-4 at 10.

#### 2. *Applicable Standards*

Nearly 85 years ago, the Nebraska Supreme Court said that "[d]amages for pain and suffering are not allowable during the time that the injured person is unconscious. Allowance can only be made for pain and suffering of which the injured person is conscious." *Vanderlippe v. Midwest Studios*, 289 N.W. 341, 349 (Neb. 1939). Since then, the Nebraska Supreme Court has continued to impart a consciousness requirement in discussing the recoverability of damages for pain and suffering. *See e.g.*, *Nelson*, 434 N.W.2d at 30 ("we have long permitted a decedent's estate to recover for the *conscious* physical pain and suffering the decedent endured after a

negligently inflicted injury resulting in death") (emphasis added); *accord Brandon v. Cnty. of Richardson*, 566 N.W.2d 776, 780 (Neb. 1997) (citing *Nelson*, 434 N.W.2d at 25); *see also Scott v. Khan*, 612, 790 N.W.2d 9, 19 (Neb. Ct. App. 2010) (the Nebraska Court of Appeals concluding evidence "was sufficient to create a material issue of fact as to whether [the decedent] experienced any *conscious* pain and suffering prior to her death") (emphasis added). Where there is conflicting evidence as to whether a decedent experienced conscious pain and suffering between the time of his accident and the time of his death, this presents a jury question as to whether the Plaintiff is entitled to such damages. *See e.g.*, *Reiser v. Coburn*, 587 N.W.2d 336, 342 (Neb. 1998).

    *3. Discussion*

Based on the matters that have been presented on this Motion, the Court acknowledges that the weight of the evidence does not suggest Vanicek experienced "conscious" pain and suffering following impact. However, "[o]n summary judgment, the district court is not to weigh evidence or draw inferences." *Cottrell v. Am. Fam. Mut. Ins. Co., S.I.*, 930 F.3d 969, 972 (8th Cir. 2019). "[T]hose functions belong to the jury." *Id.* at 971. Although perhaps not overwhelming evidence of consciousness, the "combative" note that appears in Vanicek's medical records could permit a reasonable juror to conclude that Vanicek was conscious at one point in time following impact. Therefore, because Plaintiff has cited to particular materials in the record that demonstrate a genuine issue of material fact on this question, summary judgment is inappropriate. *See Erickson*, 31 F.4th at 1048.

Defendants do not dispute that this notation appears within Vanicek's medical records; nor do they question the validity or authenticity of the medical records themselves. Filing 126 at 6. Instead, they argue that it "is immaterial, inadmissible as hearsay, and unsupported." Filing 126 at 6. The Court fails to see how this evidence is "immaterial." Evidence that an individual was "combative" after suffering a serious injury would make it more likely that he was conscious at

13

some point prior to dying—the very issue in dispute. As for Defendants' claim that this evidence is "unsupported" elsewhere in the record, that only tends to favor the denial of summary judgment. In describing this evidence as "unsupported," Defendants are really just saying that it "conflicts" with other evidence contained elsewhere in the record. *See* Wilson v. Myers, 823 F.2d 253, 256 (8th Cir. 1987) ("The trial court errs when it takes upon itself, in deciding a summary judgment motion, to weigh conflicting evidence and to resolve the issue based on the evidence"). Thus, both of these objections lack merit.

Defendants' hearsay objection is also without merit. *See* Filing 127 at 7. They assert "that in order to defeat summary judgment, the non-moving party must present *admissible* evidence creating a genuine dispute of material fact." Filing 127 at 7 (emphasis added). Yet, that is not an accurate statement of the law. "[T]he standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (emphasis in original); *see also Oglesby v. Lesan*, 929 F.3d 526, 534 (8th Cir. 2019) ("Oglesby argues that multiple exhibits Officer Hein and Deputy Lesan submitted were not properly authenticated. However, Oglesby makes no showing that these documents *could not* be presented at trial in an admissible form") (footnote omitted) (emphasis in original). Thus, the question is not whether this "combative" notation in the medical records is admissible in its current form; it is whether this statement "*could* be presented at trial in an admissible form." *Gannon*, 684 F.3d at 793 (emphasis in original).

The Court concludes that this statement could be introduced in a permissible form pursuant to Federal Rule of Evidence 803(4).[8] This rule provides a hearsay exception for statements made

---

[8] The Court further notes that the medical records themselves, which contain this reference to Vanicek being "combative," could also likely be admitted as a business record pursuant to Fed. R. Evid. 803(6).

14

for medical diagnosis or treatment. Fed. R. Evid. 803(4). It directs that a statement is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness, when the statement "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). Thus, "for statements to be admissible under Rule 803(4), 'the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and . . . the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis.'" *United States v. Earth*, 984 F.3d 1289, 1295 (8th Cir. 2021) (quoting *United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985)).

In *Earth*, the Eighth Circuit explained that because the statements in question "were made directly to medical professionals attempting to treat [the victim's] injuries, there is no question these statements were made for any other reason than 'medical diagnosis or treatment.'" *Earth*, 984 F.3d at 1296 (quoting Fed. R. Evid. 803(4)(A)). The same is true here. Considering the context in which this statement must have been made, the Court cannot envision any motive other than for reasons related to medical diagnosis or treatment. Therefore, the first prong of the rule is satisfied. The second prong of the rule is also satisfied because describing the victim of an automobile collision as "combative" relates to the victim's "present symptoms or sensations." Fed. R. Evid. 803(4)(B). Whether this statement was accurate—as Defendants dispute—is a separate question entirely and does not govern whether it is excludable hearsay. Indeed, the veracity of this statement is precisely the type of question that is typically reserved for the factfinder at trial. *See Walz v. Randall*, 2 F.4th 1091, 1099 (8th Cir. 2021) (noting that at the summary judgment stage the Court does not make credibility determinations or attempt to discern the truth of any factual issue).

Defendants further argue that "the 'combative' indication found in the record presents infinite, unknown levels of hearsay" and it is unknown who made the original statement or who recorded it. Filing 127 at 7. They therefore submit that "the combative indication would be considered double hearsay not admissible at trial." Filing 127 at 2. Contrary to Defendants' suggestion, hearsay within hearsay is not automatically excludable. *See Earth*, 984 F.3d at 1297 n.3. It just means that all levels of hearsay must satisfy an exception. *See* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements confirms with an exception to the rule"). Although the Court fails to see how the motive behind this statement's utterance was likely for anything other than matters relating to medical diagnosis or treatment no matter how many layers of hearsay are at issue, the identity of the declarant (or declarants) is unclear at this stage. Therefore, while the Court finds that this statement could potentially be admitted pursuant to Rule 803(4), Defendants are free to raise this objection at trial if Plaintiff offers this statement pursuant to Rule 803(4) without a sufficient foundation. This course of action is particularly prudent because Defendants raised this hearsay objection in their reply brief which—while appropriate under the circumstances—means that Plaintiff has not had an opportunity to address the hearsay objection. If Plaintiff is ultimately unable to admit these medical records at trial by failing to establish an appropriate foundation or demonstrating that a hearsay exception applies, then Defendants are free to reassert this matter at that time.

When viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, the Court concludes there is a genuine issue of material fact as to whether Vanicek was conscious at any point in time between the accident and his death. *See Grinnell*, 34 F.4th at 652. An individual's "combativeness" would suggest some degree of consciousness, and a reasonable jury could conclude from the medical records that Vanicek was

conscious at some point in time following the accident based on this notation in his medical records. Dr. Gwin's opinion that "a period of consciousness and resultant pain and suffering cannot be excluded" reinforces this conclusion. *See* Filing 117-4 at 10; *see also* Filing 121-3 at 5. It is therefore appropriate for a jury to weigh the evidence and determine whether it is more or less likely that he was conscious at any point between the collision and his death.

### E. Order to Show Cause

Counsel for Plaintiff, Larry R. Demerath, is required to show cause as to why this Court should not sanction him for failure to comply with NECivR 56.1 after a prior warning that compliance is required. Mr. Demerath is required to file a response within fourteen (14) days of the date of this Order addressing only the issue of why he should not be sanctioned for his unexplainable conduct in repeatedly not following this Court's rules.

Mr. Demerath is further ordered to provide a copy of this order to his client within seven (7) days of the date of this Order given that Mr. Demerath's repeated failure to follow this Court's rules can negatively impact Plaintiff's interests in this case. Mr. Demerath shall file a Notice of Compliance within 14 days of the date of this Order stating that he has complied with this Order, including giving a copy of this order to the named Plaintiff.

### IV. CONCLUSION

Defendants are not entitled to the relief they seek. The Court therefore denies Defendants' Motion for Partial Summary Judgment (Filing 114) in full. Accordingly,

IT IS ORDERED:

1. Defendants' Motion for Partial Summary Judgment, Filing 114, is denied;

2. Counsel for Plaintiff, Larry R. Demerath, is required to **SHOW CAUSE** as to why this Court should not sanction him for failure to comply with NECivR 56.1 after a prior warning that compliance is required. Mr. Demerath is required to file a response within fourteen (14) days of

the date of this Order, provide a copy of this order to the named Plaintiff, and file a Notice of Compliance within 14 days of the date of this Order stating that he has complied with this Order.

Dated this 22nd day of August 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge