IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSICA VANICEK, Personal Representative of the Estate of Ryan T. Vanicek;<br><br>Plaintiffs,<br><br>And<br><br>LYMAN-RICHEY CORPORATION, d/b/a CENTRAL SAND AND GRAVEL COMPANY,<br><br>Plaintiff-Intervenor<br><br>vs.<br><br>KENNETH E. KRATT, and SANDAIR CORPORATION,<br><br>Defendants. | 8:21-CV-49<br><br>**MEMORANDUM AND ORDER ON DEFENDANTS' "MOTION TO STRIKE"** |

This case arises out of the untimely death of Ryan Vanicek. Filing 86 at 1. Kenneth E. Kratt and Sandair Corporation (collectively Defendants) have admitted they are liable for Vanicek's death. Filing 86 at 3 (citing Filing 35 at 4 (¶18) and Filing 35 at 5 (¶27)). However, the parties dispute the damages that are owed and may be recoverable. *See generally* Filing 114; Filing 124. This matter comes before the Court on Defendants' "Motion to Strike Plaintiff's Experts." Filing 109. Defendants ask that the Court "strike Plaintiff's emotional distress experts because they are irrelevant, inadmissible and prejudicial" and further requests that this Court "strike Plaintiff's pre-impact fear and apprehension or post-impact conscious pain and suffering experts because" they lack the requisite bases to form opinions and will not "assist the trier of fact." Filing 109 at 2.[1] For

---

[1] After Defendants submitted their reply brief in support of their Motion to Strike, Plaintiff filed a Motion seeking leave of the Court to file a sur-reply. Filing 125. The Court denied this Motion in a written order. Filing 129.

the reasons explained in this Order, the Court grants Defendants' Motion, Filing 109, in part and denies it in part.[2]

## I. BACKGROUND

As the Court recounted in a prior Order, Vanicek "died on September 20, 2019, while driving a Chevrolet Silverado on Interstate 80 when a Peterbilt tractor with a trailer collided with [his] vehicle." Filing 86 at 3. The present Motion concerns the relevancy and admissibility of expert opinion testimony as to: (1) the emotional harm that may have been suffered by those who survived Vanicek, (2) whether Vanicek experienced pre-impact fear and apprehension, and (3) whether Vanicek experienced conscious, post-impact pain and suffering. *See generally* Filing 109; Filing 110. The Court will discuss the relevant facts in its analysis of each expert opinion at issue.

Before doing so, however, it is important to first note that although Defendants refer to Filing 109 as a "Motion to Strike," it is—in substance—a motion in limine. Defendants do not cite Rule 12(f) of the Federal Rules of Civil Procedure, nor do Defendants ask that the Court "strike" any particular line or paragraph from an expert report. *See generally* Filing 109; Filing 110; Filing 123. Instead, Plaintiff requests that the Court "strike" the experts themselves. *See e.g.*, Filing 110 at 1, 3. Courts might "exclude" expert testimony where appropriate, or "strike" pertinent portions of an expert's report, but typically they do not "strike" an expert in his or her entirety—except perhaps as a sanction. *See* Fed. R. Civ. P. 37(c)(1). Here, Defendants purportedly move to "strike" a number of Plaintiff's experts based upon their anticipated testimony. *See* Filing 110 at 1. In other words, Defendants' Motion takes issue with the relevancy, reliability, and admissibility of these

---

Accordingly, the Court will neither consider nor address the arguments Plaintiff attempted to raise for the first time via a sur-reply brief for the reasons this Court previously explained. *See* Filing 129 at 3.

[2] Throughout this Order, the Court's references to "Vanicek" are to the decedent, Ryan Vanicek. The only remaining plaintiff in this case is Vanicek's Estate. The Court will refer to the Estate as either "Plaintiff" or "it."

expert's opinions—not the experts themselves. The Court therefore understands Defendants to be moving to "exclude" expert testimony, something that is more properly challenged through a motion in limine.[3] The Court will therefore consider this "Motion to Strike" under the standards applicable to motions in limine. However, the Court will continue to reference this Motion as Defendant's "Motion to Strike" because that is how they have captioned it.

## II. LEGAL ANALYSIS

### A. The Negligent Infliction of Emotional Distress Claims

In support of their Motion, Defendants argue that Ms. Cornwell, Ms. Cada, Dr. Sanders, and Dr. Feltoon should not be permitted to testify regarding emotional distress suffered by those who survived Vanicek. *See* Filing 110 at 3–4. This Court previously dismissed the negligent infliction of emotional distress (NIED) claims that were brought by three different plaintiffs who are no longer parties to the remaining action. *See* Filing 86 at 43 (dismissing the NIED claims brought by Thomas Vanicek, Karen Vanicek, and Tamara Witzel). Counsel for Plaintiff, who also represents the plaintiffs whose NIED claims were previously dismissed, acknowledges this fact and notes that he only intends to offer such testimony as an offer of proof for appeal purposes. Filing 121 at 2. Accordingly, any expert testimony regarding the damages suffered by these individuals who are no longer parties to the suit and whose claims have been dismissed is plainly irrelevant and will not be admitted. The Court grants Defendants' Motion to the extent it seeks to preclude expert testimony regarding emotional distress suffered by Jessica Vanicek, Karen Vanicek, Thomas Vanicek, and Tamara Witzel in relation to the NIED claims they attempted to bring.

---

[3] *See in-limine*, Black's Law Dictionary, 941 (11th ed. 2019) ("(Of a motion or order) raised preliminarily, esp. because of an issue about the admissibility of evidence believed by the movant to be prejudicial").

### B. Emotional Distress Damages on the Wrongful Death Claim

The Court now turns to the wrongful death claim brought by Vanicek's Estate. Under Nebraska law, "damages are not recoverable for mental suffering or anguish, bereavement, or solace" in an action for wrongful death. *Williams v. Monarch Transp., Inc.*, 470 N.W.2d 751, 756 (Neb. 1991). It would therefore be improper to allow expert testimony regarding the mental suffering or anguish that Vanicek's widow and children have suffered. However, Nebraska law does permit Plaintiff to recover pecuniary damages, including "the pecuniary value of the loss of the decedent's support, society, comfort, and companionship." *In re Est. of Panec*, 864 N.W.2d 219, 225 (Neb. 2015). The Nebraska Supreme Court has explained that "[t]here is no exact fiscal formula for determination of damages recoverable for loss of society, comfort, and companionship; a loss which is not subject to some strict accounting method based on monetary contributions, past or prospective." *Brandon ex rel. Est. of Brandon v. Cnty. of Richardson*, 664, 624 N.W.2d 604, 625 (Neb. 2001). Instead, "[d]amages for loss of society must be determined upon a consideration of the facts of each case." *Id.* Thus, the question before the Court is whether Ms. Cornwell, Ms. Cada, Dr. Sanders, or Dr. Feltoon will opine on pecuniary damages that are recoverable under Nebraska law, or whether Plaintiff would have them opine on damages related to "mental suffering or anguish, bereavement, or solace[.]" *Williams*, 470 N.W.2d at 756.

At no point in Plaintiff's Rule 26 Disclosure (Filing 101) or brief (Filing 121) did Plaintiff suggest that these four experts would testify as to "the pecuniary value of the loss of the decedent's support, society, comfort, and companionship." *Panec*, 864 N.W.2d at 225. Instead, Plaintiff argues that these experts will opine on the "current and future needs for mental health care to treat symptoms brought about as a direct result of Defendants' tortious actions" as to Vanicek's widow and their three children. Filing 121 at 2. Given that "damages are not recoverable for mental suffering or anguish, bereavement, or solace" in an action for wrongful death, *Williams*, 470

4

N.W.2d at 756, Plaintiff's proffered reason for allowing this testimony is clearly impermissible. Thus, while the Court will not "strike" these experts, it will not allow them to testify on damages relating to "mental suffering or anguish, bereavement, or solace[.]" *Williams*, 470 N.W.2d at 756.

To be sure, the Court's ruling does not preclude Plaintiff from presenting evidence or testimony that relates to "the pecuniary value of the loss of the decedent's support, society, comfort, and companionship." *Panec*, 864 N.W.2d at 225.[4] Whether or not Plaintiff may do so through these experts without running afoul of Federal Rule of Civil Procedure 26 is not presently before the Court. If this issue should ripen and Plaintiff attempts to offer expert testimony that was not timely disclosed, Defendants are free to raise such an objection at the appropriate time.[5] For now it is enough to say that Plaintiff will not be permitted to call these expert witnesses for the purposes of testifying as to damages relating to "mental suffering or anguish, bereavement, or solace[.]" *Williams*, 470 N.W.2d at 756.

### C. Expert Testimony Regarding Vanicek's Pre-Impact Fear and Post-Impact Consciousness

1. Overview

Defendants' "Motion to Strike" also moves to preclude a number of Plaintiff's experts from testifying in relation to the pre-impact fear or post-impact pain and suffering Vanicek may have experienced. Filing 109 at 1–2. Here again, the Court understands Defendants to really be moving in limine given that they ground their argument in Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrel Dow Pharms., Inc.*, 509 U.S. 579 (1993). *See* Filing 110 at 4–5; *cf. Parker v.*

---

[4] Indeed, Plaintiff's Rule 26 Disclosure notes that Dr. Keith Wm. Fairchild, "prepared an assessment of the Pecuniary Losses of [Vanicek] . . . in order to assess valuation accruals to [Vanicek's] wife and children beginning in September 2019 through his life expectancy." Filing 101 at 21. Among other things, Plaintiff states that Dr. Fairchild's report included the "pecuniary loss of services and pecuniary loss of maintenance and support." Filing 101 at 21. Defendants have not moved to exclude Dr. Fairchild's testimony.

[5] The Court's Trial Setting Order, dated May 23, 2023, directs that "Motions in limine and motions seeking pretrial evidentiary hearings regarding the admissibility of evidence shall be filed no later than twenty-eight (28) days before trial." Filing 130 at 2. Trial in this case is presently scheduled to begin on February 13, 2024. Filing 130 at 1.

*Crete Carrier Corp.*, 839 F.3d 717, 721 (8th Cir. 2016) (noting that the defendant moved in limine to exclude expert testimony under *Daubert*). This portion of Defendants' Motion addresses four of Plaintiff's experts: (1) Dr. Chester Gwin; (2) Dr. Brian G. Pfeifer; (3) Dr. Christopher Sanders; and (4) Mr. Jeffery Clark. Filing 110 at 5–13. Defendants argue that these four experts will not assist the trier of fact because their opinions are neither reliable nor based on sufficient facts and data. Filing 110 at 4. After addressing the law that governs this analysis, the Court will individually discuss each of these four experts.

    2. Applicable Standards

Expert opinion testimony is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue," it is "based upon sufficient facts or data," and it is "the product of reliable principles and methods" which have been reliably applied "to the facts of the case." Fed. R. Evid. 702. In considering admissibility, the district court's job as gatekeeper is to "ensure that all scientific testimony is both reliable and relevant." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) (citing *Daubert*, 509 U.S. at 580). The inquiry "is a flexible one designed to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Id.* at 758. However, "[e]xpert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *In re Wholesome Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019) (citing *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000)).

"A district court has great latitude in determining whether expert testimony meets the reliability requisites of Rule 702." *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761,

776 (8th Cir. 2004). To meet the reliability requirement, the proponent of an expert opinion must show "that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Marmo*, 457 F.3d at 757-58; *see also Daubert*, 509 U.S. at 592-93 (stating that the court must assess "whether the reasoning or methodology underlying [an expert opinion] is scientifically valid"). "[C]onclusions and methodology are not entirely distinct from one another." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded." *Marmo*, 457 F.3d at 758. To satisfy the relevance requirement, the proponent of an expert opinion must demonstrate "that the reasoning or methodology in question is applied properly to the facts in issue." *Id.* A court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146. In exercising its gatekeeping role under *Daubert*, the court must focus "specifically on the methodology." *Synergistics, Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007).

   3. Discussion
      a. Dr. Chester Gwin

Dr. Gwin is a forensic pathologist. Filing 110 at 5 (citing Filing 101 at 21). With respect to pre-impact fear and apprehension, Dr. Gwin opined that "it is reasonable to conclude that Vanicek was aware of his impending collision[.]" Filing 111-1 at 9. However, Defendants argue "that Dr. Gwin does not have any expertise regarding pre-impact fear and apprehension." Filing 110 at 5. In support of their argument, Defendants emphasize Dr. Gwin's lack of familiarity with tractor-trailers, traffic safety, accident reconstruction, and biomechanics. *See* Filing 110 at 5; Filing 111-1 at 8. They also note that Dr. Gwin has "never provided opinions on pre-impact fear and apprehension before." Filing 110 at 5; Filing 111-1 at 13. When asked to provide the basis for his opinion, Dr. Gwin stated, "I think as a reasonable driver that you are going to be aware of your

surroundings, you're going to either see and/or hear a rapidly approaching vehicle, an 18-wheeler, which is much lighter and bright yellow in color, coming behind you." Filing 111-1 at 9. However, he later conceded that this basis was not attributable to his expertise as a forensic pathologist. Filing 111-1 at 9. Dr. Gwin instead tied his expertise to the fact that he had a driver's license. Filing 111-1 at 9. The Court finds that Dr. Gwin's expertise as a forensic pathologist is too far removed from the basis for his opinion regarding pre-impact fear and suffering. *See Hirchak v. W.W. Grainger, Inc.*, 980 F.3d 605 (8th Cir. 2020) (noting that courts "must not permit an expert to proceed beyond his expertise") (cleaned up). It is also superfluous, because a lay person could reach this same common-sense determination without the assistance of an expert. *See United States v. Watkins*, 66 F.4th 1179, 1185 (8th Cir. 2023). Dr. Gwin is therefore precluded from offering an opinion as to whether Vanicek was aware of his impending collision.

With respect to post-impact pain and suffering, Dr. Gwin opined that "a period of consciousness and resultant pain and suffering cannot be excluded." Filing 111-1 at 10. Dr. Gwin later clarified during his deposition that he could not "say with medical certainty that [Vanicek] did or did not experience conscious pain and suffering[.]" Filing 111-1 at 11. In other words, he could not "opine either way." Filing 111-1 at 11. Defendants take issue with the fact that Dr. Gwin "straddled the fence" and "did not opine that [Vanicek] experienced post-impact conscious pain and suffering." Filing 110 at 6. They therefore argue that "[t]o the extent he even has an opinion . . . [s]uch an 'opinion' cannot be allowed because it is not based on sufficient facts or data, it is speculative, and it does not assist the trier of fact in any way." Filing 110 at 9.

The Court disagrees. Dr. Gwin formed his opinion based in significant part on information contained within Vanicek's medical records, including the notation suggesting that Vanicek was "combative" at some point after the collision. *See* Filing 111-1 at 7–8, 10. Defendants contend that

8

the source of this information is unknown and that its meaning is ambiguous. Filing 110 at 7. However, to the extent Defendants seek to advance an argument that Dr. Gwin formed his opinion based on what may be inaccurate information contained within the medical records, that is a matter better left to cross-examination at trial. *See McLaughlin v. BNSF Ry. Co.*, 439 F. Supp. 3d 1173, 1180 (D. Neb. 2020) ("[W]here a medical expert has relied upon a patient's self-reported history and that history is found to be inaccurate, district courts usually should allow those inaccuracies to be explored through cross-examination."). Moreover, Defendants do not suggest—and the Court is aware of no authority that says—expert testimony is necessary to establish whether an individual is conscious in such situations.[6] In this sense, Dr. Gwin's testimony is helpful to the factfinder because it indicates that the medical evidence is inconclusive on this question. *Cf. United States v. Kent*, 531 F.3d 642, 651 (8th Cir. 2008) ("It was not an abuse of discretion to admit the expert's opinion that [the defendant] could not be excluded as a DNA contributor" even though "[t]he expert could not testify that [the defendant] was definitely the contributor of the DNA"). As Dr. Gwin later explained in a subsequent affidavit, in his view "it is not possible based upon reasonable medical certainty to opine that [Vanicek] was rendered unconscious as a result of the first impact of the accident – particularly given the additional head injuries not solely explained by acceleration-deceleration trauma sustained during the total accident herein [sic] question . . . ." Filing 121-3 at 5. Accordingly, Dr. Gwin will be permitted to testify that "a period of consciousness and resultant pain and suffering cannot be excluded." Filing 111-1 at 10.

### b. Dr. Brian G. Pfeifer

Dr. Pfeifer is a forensic engineer. Filing 110 at 9 (citing Filing 101 at 20). Dr. Pfeifer did not opine that Vanicek did, in fact, see Defendants' semi-truck approach him before the collision

---

[6] Indeed, Defendants provided an affidavit from a lay witness to the scene who stated that he "was unaware of any observations that would show he was conscious at any time [he] was at the scene." *See* Filing 111-2. Defendants do not suggest that they intend to qualify this witness as an expert prior to offering this testimony.

9

occurred. Filing 111-1 at 34. Instead, he opined that Vanicek "could have observed the approaching tractor trailer and become aware of the inevitability of the ensuing collision" given that the tractor trailer would have been visible to him for approximately 8.5 seconds prior to the collision. *See* Filing 111-1 at 32–33. Defendants note that Dr. Pfeifer did not know what Vanicek was doing, where he was looking, or whether he was in fact aware that the collision would occur during those 8.5 seconds. Filing 110 at 9. They therefore contend that his "bare speculation cannot masquerade as an 'opinion' to get before the jury." Filing 110 at 10.

Again, the Court disagrees. Defendants do not dispute Dr. Pfeifer's expertise as a forensic engineer and accident reconstructionist; nor do they contend that he employed an improper methodology or applied such methodology incorrectly in arriving at his conclusions. *See* Filing 110 at 9. Indeed, Defendants' brief does not directly dispute the 8.5 seconds figure that Dr. Pfeifer reached. *See* Filing 110 at 9. Defendants are incorrect to the extent they suggest Dr. Pfeifer needs to unequivocally state Vanicek actually saw the tractor trailer approach in order to render an opinion. His opinion that Vanicek had a specific window of opportunity to see the collision coming will help the trier of fact determine whether it is more likely than not that he did, in fact, see the collision coming. Therefore, this opinion is admissible.

    c. Dr. Christopher Sanders

Dr. Sanders is a clinical neuropsychologist. Filing 110 at 10 (citing Filing 101 at 20, 26).[7] He completed a report in this case regarding the time it takes for the human brain to react to a trauma. Filing 101-4 at 178. Dr. Sanders noted that one particular research study had "recorded human intracranial electrophysiological data and found fast amygdala responses, beginning 74-ms

---

[7] Dr. Sanders has been noticed as both a retained and non-retained expert in this case. Filing 101 at 14, 20. This portion of the Court's ruling concerns the testimony Dr. Sanders would give in his capacity as a retained expert. *See* Filing 101 at 26.

post stimulus onset, to fearful, but not neutral or happy, facial expressions." Filing 101-4 at 179.[8] He then explained that this meant "after the subjects viewed the feared object, their amygdala, which is the primary fear center in the brain, registered and reacted to the fear." Filing 101-4 at 179. Dr. Sanders concluded that "[t]his is the speed that Mr. Vanicek's brain most likely registered terror from the impending collision." Filing 101-4 at 179; *see also* Filing 101 at 26. However, when Dr. Sanders was questioned about this report during his deposition, he conceded that there were "no facts to support whether or not Mr. Vanicek was aware of the tuck coming from behind him[.]" Filing 111-1 at 46. Defendants therefore argue that "Dr. Sanders only has speculation and supposition; he does not hold any scientifically reliable opinions to a sufficient—or any—degree of professional certainty" and his "non-conclusive 'opinion' cannot be allowed as it is not based on sufficient facts or data, is speculative, and does not assist the trier of fact in any way." Filing 110 at 11.

The Court agrees with Defendants to an extent. Dr. Sanders will not be permitted to opine on whether Vanicek likely did or did not see Defendants' semi-truck approaching. Dr. Sanders plainly admitted during his deposition that he did not "see any objective evidence" indicating whether Vanicek was aware of the semi-truck behind him. *See* Filing 111-1 at 46. However, Dr. Sanders will be permitted to offer evidence regarding the speed at which the human brain is capable of registering fear when confronted with fear-provoking stimuli. Especially when coupled with Dr. Pfeifer's opinion that Vanicek had a little over eight seconds to see the semi-truck approaching, Dr. Sanders's testimony regarding how quickly the human brain can register fear will be helpful to the trier of fact in determining whether it is more likely than not that Vanicek did, indeed, experience pre-impact fear and apprehension—and, if so, for how long. Therefore, Dr. Sanders

---

[8] The Court understands "74-ms" to mean 74 milliseconds.

11

will be permitted to testify regarding how long it would have taken Vanicek to experience fear "if" he saw the semi-truck approaching, but he will not be permitted to testify as to whether it is more or less likely that he "did" see the semi-truck approaching.

    d.   Mr. Jeffery Clark

Mr. Jeffery Clark is the "Director of Training" at "The Center for Transportation Safety Excellence." Filing 121-3 at 27. He completed a report in this case in which he offered three opinions. Filing 101-4 at 158–161. The first two opinions relate to whether the driver of the semi-truck would have been driving an impermissibly high number of miles and was fatigued at the time of the collision. Filing 101-4 at 159–160. As Defendants correctly note, these two opinions really go to Defendants' liability—a matter which they have admitted. *See* Filing 110 at 12. Although Defendants summarily assert these two opinions are "no longer relevant" given their admission of liability, the Court will not rule on whether these opinions are admissible at this time because that is not the basis of Defendants' Motion. *See* Filing 109 at 1–2 (seeking to exclude opinions regarding emotional distress, pre-impact fear and apprehension, and post-impact conscious pain and suffering). Thus, Mr. Clark's first two opinions are not properly at issue on this Motion, and the Court will not address them in this Order.

Mr. Clark's third opinion relates to whether Vanicek suffered pre-impact fear and apprehension, and therefore is at issue on this Motion. Filing 110 at 12. In his report, Mr. Clark opined, "It is more likely than not that a driver in [sic] slowed or stopped upon the highway would be alerted to an approaching tractor-trailer combination traveling at greater than 70 miles per hour." Filing 101-4 at 160. His purported basis for his opinion is that "a heavy truck traveling at 70 miles an hour" would produce a sound registering 89 decibels. Filing 101-4 at 160. He therefore concluded it "is more likely than not that a motorist would hear the approaching truck before impact and react by using the mirrors to identify the location of the sound." Filing 101-4 at 160.

12

Assuming that Mr. Clark can provide an appropriate foundation establishing his bases of knowledge, the Court will not preclude him from testifying as to how many decibels a semi-truck like the one at issue in this case would produce under a given set of circumstances. This information would be relevant and helpful to the trier of fact in determining whether it is more likely than not that Vanicek would have heard the truck as it approached him, thereby triggering him to observe it prior to impact.

However, Mr. Clark will not be permitted to offer an opinion as to whether it is likely that Vanicek "did" observe the semi-truck as it approached. First, the Court does not see how this ultimate opinion offers something outside the comprehension of lay persons; it is hardly novel to suggest that people look around when they hear a loud noise. *See Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015) (noting that "courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion") (internal quotation marks and citation omitted). Second, Mr. Clark did not express this opinion to a reasonable degree of scientific certainty—the requisite standard under *Daubert*; instead, he expressed his opinion in terms of "more likely than not." Filing 101-4 at 160; *cf. Bland v. Verizon Wireless,* 538 F.3d 893, 897 (8th Cir. 2008) (upholding the district court's decision to exclude a doctor's opinion under *Daubert*, because his "causation opinion could not possibly be based upon a reasonable degree of medical certainty"). Third, Mr. Clark effectively admitted during his deposition that the sound level inside Vanicek's truck would not have been 89 decibels, and he did not account for other ambient sounds that may have been present on the interstate. *See* Filing 111-1 at 57–59. Finally, Mr. Clark admitted that his theory regarding whether Vanicek would have heard the semi-truck as it approached has not been subject to peer review or publication, he does not know its potential rate of error, and that he did not have expertise in human

hearing. Filing 111-1 at 62. For all of these reasons, he will not be permitted to render an opinion as to whether Vanicek would have heard the semi-truck approach him from behind.

    *4. Summary and Conclusion*

In summary, Dr. Gwin will not be permitted to testify regarding whether Vanicek was aware of the impending collision. However, Dr. Gwin will be permitted to offer his opinion that after the collision occurred, "a period of consciousness and resultant pain and suffering [on the part of Vanicek] cannot be excluded." Filing 111-1 at 10. Dr. Pfeifer will be permitted to offer his opinion that Vanicek could have observed the approaching tractor trailer and become aware of the inevitability of the ensuing collision given the window of opportunity between when Defendants' truck would have been visible to Vanicek and when the collision occurred. Dr. Sanders will not be permitted to opine as to whether Vanicek "did" see the semi-truck approach from behind, but he will be permitted to testify as to how long how long it would have taken Vanicek's brain to register a fear response "if" he saw the semi-truck approaching. Finally, Mr. Clark will not be permitted to offer an opinion regarding whether it is more or less likely that a motorist like Vanicek "would hear the approaching truck before impact and react by using the mirrors to identify the location of the sound." Filing 101-4. However, this ruling does not necessarily preclude Mr. Clark from providing testimony as to how loud a semi-truck like the one at issue in this case can be assuming that an appropriate foundation is laid. Thus, Defendant's "Motion to Strike," Filing 109, is granted in part and denied in part for the foregoing reasons.

### III. CONCLUSION

For the reasons explained in this Order, the Court grants Defendants' "Motion to Strike" (Filing 109) in part and denies it in part. Accordingly,

    IT IS ORDERED: Defendants' "Motion to Strike," Filing 109, is granted in part and denied in part for the reasons explained in this Order.

Dated this 22nd day of August 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

15