IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSICA VANICEK, Personal Representative of the Estate of Ryan T. Vanicek, <br><br> Plaintiff, <br><br> And <br><br> LYMAN-RICHEY CORPORATION, D/B/A CENTRAL SAND AND GRAVEL COMPANY, <br><br> Plaintiff-Intervenor, <br><br> vs. <br><br> KENNETH E. KRATT, and SANDAIR CORPORATION, <br><br> Defendants. | **8:21CV49** <br><br><br> **MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DEPOSIT SETTLEMENT FUNDS INTO COURT** |

After the tragic death of Ryan Vanicek on September 20, 2019, in a traffic accident, Vanicek's Estate (the Estate) brought this action against Defendants allegedly responsible for the accident. Filing 30. Vanicek's former employer, Lyman-Richey Corporation (LRC), intervened as a plaintiff in the action. Filing 5 (motion to intervene); Filing 9 (order granting intervention). After failed mediations, the Court compelled settlement of this case pursuant to Nebraska Revised Statute § 48-118.04(1)(b)—over the Estate's objections—for the $5 million offered by Defendants. Filing 174. Subsequently, the Court entered an order distributing the settlement funds between the Estate and LRC to account for LRC's payment of workers' compensation benefits. Filing 190. This case is now before the Court on Defendants' Motion for Leave to Deposit Settlement Funds into the Court because the Estate has delayed acceptance of the settlement funds. Filing 212. For the reasons stated below, the Defendants' Motion is granted.

# I.  INTRODUCTION

## A.  Background

The background pertinent to this ruling consists of the Court's orders compelling settlement and distributing settlement proceeds as well as subsequent events, including Defendants' efforts to pay the settlement funds to the Estate. In an October 26, 2023, Memorandum and Order, Filing 174, the Court granted LRC's Motion to Determine Fairness and Reasonableness of Settlement, Filing 138. The Court found the settlement offer of $5 million by Defendants to be fair and reasonable and compelled settlement pursuant to Neb. Rev. Stat. § 48-118.04(1)(b). Filing 174 at 14–15. The Court further directed that Defendants were to pay $5 million to be split between the Estate and LRC and directed the Estate and LRC to agree in writing to the distribution of the proceeds of the settlement or notify the Court that an order of fair and equitable distribution would be necessary. Filing 174 at 15. The Court also stated, "All claims against Defendants by Plaintiff and Plaintiff-Intervenor are dismissed." Filing 174 at 15. None of the parties' briefs concerning the Motion to Determine Fairness and Reasonableness of Settlement raised any issues concerning post-settlement interest. *See generally* Filing 139; Filing 149; Filing 153.

Neither the Estate nor LRC disputes Defendants' representation that on October 27, 2023—the day after the Court's order compelling settlement—Defendants' counsel emailed Plaintiff's counsel, "Counsel – Please provide your W9s at your earliest convenience and draft instructions once you determine the distribution of the proceeds." Filing 212-1 at 2 (¶ 7) (citing Filing 212-1 at 4). Apparently, no response from Plaintiff's counsel was forthcoming.

LRC and the Estate were unable to reach an agreement on distribution of the settlement funds. On January 29, 2024, LRC filed its Motion to Determine Distribution of Settlement Proceeds. Filing 182. On February 8, 2024, the Estate responded to that motion "notif[ying] the

Court that an Order of fair and equitable distribution is necessary," while reiterating its position that the settlement was not fair or reasonable. Filing 186 at 2. However, the Estate did not suggest in its response that the settlement should have included post-settlement interest. *See generally* Filing 186. On February 28, 2024, the Court granted LRC's Motion and directed that LRC receive the total sum it had paid in workers' compensation benefits to the Estate; that LRC be released from all future obligations to the Estate; and that the Estate receive the remaining balance of the $5 million settlement amount. Filing 190 at 4. On February 28, 2024, the Court also entered the following Judgment:

> In accordance with the October 26, 2023, Memorandum and Order granting plaintiff-intervenor Lyman-Richey Corporation's (LRC's) Motion to Determine Fairness and Reasonableness of Settlement, Filing 174, and the February 28, 2024, Order granting LRC's Motion to Determine Distribution, Filing 190,
>
> IT IS ORDERED that this case is settled on the terms provided for in the Order granting LRC's Motion to Determine Distribution, Filing 190.

Filing 191. On February 28, 2024, Defendants' counsel again emailed Plaintiff's counsel, "Counsel – Please provide your draft instructions and W9s at your earliest convenience." Filing 212-1 at 2 (¶ 9) (citing Filing 212-1 at 6). There is nothing in the record indicating that Plaintiff's counsel responded to that request.

On March 28, 2024, the Estate filed a Notice of Appeal. Filing 192. On March 29, 2024, the Estate filed a Motion to Stay Operation of Judgment. Filing 197. In that Motion, the Estate sought an order directing Defendants to pay the $5 million in settlement proceeds to the Clerk of Court rather than to LRC or Mrs. Vanicek. Filing 197 at 3. The Estate further asked that LRC be directed to continue making the weekly payments of workers' compensation benefits it had been making pursuant to Nebraska law. Filing 197 at 3. If the Court's orders were affirmed on appeal, the Estate requested that on remand the Court order the principal funds held by the Clerk to be

applied first to reimbursement of LRC for all reasonable workers' compensation benefits paid through the time of that payment. Filing 197 at 4. The Estate asked that the remainder of the principal be paid to Mrs. Vanicek, with interest paid on the debt instruments to be apportioned pro rata between those parties in proportion to the respective portions of the principal. Filing 197 at 4. However, the Estate's Motion to Stay again made no mention of post-settlement or post-judgment interest. *See generally* Filing 197; Filing 197-1.

On May 24, 2024, the Court entered a Memorandum and Order on Plaintiff's Motion to Stay Operation of Judgment denying that Motion. Filing 209. The Court concluded that the Estate had failed to demonstrate that any of the factors pertinent to determination of whether a stay pending appeal is appropriate pursuant to Federal Rule of Civil Procedure 62(b)—as set out in *Organization for Black Struggle v. Ashcroft*, 978 F.3d 603, 607 (8th Cir. 2020)—either singly or together, weighed in favor of a stay. Filing 209 at 6–8. On June 17, 2024, LRC filed in this case its Notice of Subrogation Interest, providing notice that it has paid $297,311.23 in workers' compensation benefits on the Estate's claim. Filing 210.

On July 15, 2024, Defendants' counsel once again emailed Plaintiff's counsel, "Larry – We requested draft instructions and W9s multiple times; please let me know when you are ready to accept payment." Filing 212-1 at 2 (¶ 11) (citing Filing 212-1 at 9). Plaintiff's counsel responded in pertinent part,

> MATT – maybe I am missing something here – but first here is a copy of my W-9's – not sure you need 2023 or 2024 – but here are both.
>
> As for delivery instructions – not sure I got that point before – but I think I have indicated we need to first jump through a couple of hoops – which we are working on.

Filing 212-1 at 8. Defendants' counsel replied in pertinent part, "I'll await you to jump through those hoops." Filing 212-1 at 8.

Defendants identify the "hoops" in question as the court-approval process in probate court necessary for a wrongful death settlement under Neb. Rev. Stat. § 30-810. Filing 212 at 3. On July 12, 2024—more than eight months after this Court's order compelling settlement—Plaintiff's counsel filed a Motion to Approve Acceptance of Judgment Proceeds in the Estate's probate matter (Nebraska County Court for Colfax County, PR-19-45) and set a hearing on that Motion for July 16, 2024. Filing 212-1 at 2 (¶ 13) (citing Filing 212-1 at 11). However, Plaintiff's counsel called the state court on July 16, 2024, to request a 45-day continuance. Filing 212-1 at 11. On August 7, 2024, a docket entry indicates that Plaintiff's counsel told state court staff that he would file a motion for a hearing once he was ready, "Maybe early Sept." Filing 212-1 at 11. No party has indicated to this Court that the hearing in state probate court has been rescheduled.

Defendants represent that they have remained ready, willing, and able to pay the $5 million settlement amount ever since the settlement was ordered, despite Plaintiff's counsel's delays. Filing 212 at 3. The Estate does not suggest that there is any basis to doubt Defendants' ability and readiness to pay at any time since the Court compelled settlement.

### B. The Parties' Arguments

In support of their Motion for Leave to Deposit Settlement Funds into the Court, Defendants argue that after the Court found the settlement was fair and reasonable in October of 2023, they have made numerous attempts to pay the $5 million settlement, but the Estate has delayed the payment. Filing 212 at 2. Defendants assert that considering the timeline and the difficulties with Plaintiff's counsel throughout this litigation and the settlement process, the Court should now enter an order granting Defendants leave to deposit the $5 million settlement funds into the Court pursuant to Federal Rule of Civil Procedure 67 and NECivR 58.1(c). Filing 212 at 3.

The Estate responds that the key issue—which had not previously been raised with this Court—is that the Estate is entitled to post-judgment interest pursuant to federal law, specifically, 28 U.S.C. § 1961, and/or state law, specifically, Neb. Rev. Stat. § 45-103, accruing from the "judgment" entered on October 26, 2023. Filing 213 at 4–5. The Estate also cites its own attempt to have the settlement proceeds paid into the Court. Filing 213 at 9 (citing Filing 197). The Estate argues,

> However, it would seem or appear the main problem in previously reaching an agreement to deposit the funds in Court -- is the interest to be allowed on the judgment herein [sic] question -- and as calculated herein above [in the Estate's Response].

Filing 213 at 9. The Estate also argues that "depositing the money into Court would relieve Defendants of the interest obligation on the judgment." Filing 213 at 9. The Estate argues that it has "no objection" to granting Defendants leave to deposit the funds representing the principal amount of $5 million into the Court, but the Estate argues that Defendants are obligated to pay interest on their judgment indebtedness. Filing 213 at 10. The Estate also disputes Defendants' contention that it has prevented Defendants from meeting any of their obligations. Filing 213 at 10. The Estate contends that Defendants "remain liable for post-judgment interest as may be further determined by the adjudication of [the Estate's] appeal to the United States Court of Appeals and any remand to this Court." Filing 213 at 10–11.

For its part, LRC states

> LRC does not object to [Defendants'] request wholesale, but does request that certain conditions be incorporated into the Court's order authorizing the payment of the settlement proceeds into the Court's registry should the deposit of the funds be approved.

Filing 214 at 1. First, LRC argues that the Court should specify that the funds will be held pending the resolution of the pending appeal to the Eighth Circuit Court of Appeals. Filing 214 at 3. Second, LRC argues that the Court should specify that proceeds will be deposited in an

interest-bearing account or investment in a court-approved, interest-bearing instrument in accordance with Federal Rule of Civil Procedure 67(b) and that the Court should further specify that the interest accrued on the deposited funds be divided in proportion to the parties' respective interests in the principal once the Eighth Circuit issues its mandate. Filing 214 at 3. Third, LRC argues that the Court should state that the payment into the Court's registry should not be construed as a full satisfaction of the underlying judgment. Filing 214 at 4. As to this condition, LRC adds,

> The pending motion does not address post-judgment interest, which generally accrues on federal court judgments pursuant to 28 U.S.C. § 1961. Given that the Defendants have not argued or established that post-judgment interest is not accruing as part of the pending motion, LRC respectfully suggests that the availability of post-judgment interest be addressed in due course, following the entry of the Eighth Circuit's mandate.

Filing 214 at 4.

Before Defendants filed their Reply, the Estate filed a Response to Intervenor's Response. Filing 215. The Estate reiterates that under either 28 U.S.C. § 1961 or Neb. Rev. Stat. § 45-103, post-judgment interest must be awarded on the settlement amount. Filing 215 at 11. The Estate also argues that "given this matter is currently on appeal FRAP -- Rule 37 -- addresses the responsibilities of the Appeals Court with respect to any interest issues . . . -- which may relieve this Court of that responsibility." Filing 215 at 11. Thus, the Estate argues,

> With all due respect to this Court -- its responsibilities under the better law as set forth herein above -- would be to "park" the judgment money plus interest to date with the Clerk of the Court -- if it deems same to be prudent. Any decisions on the judgement and/or interest and/or how it gets divided would be directed by the Court of Appeals under at least FRAP -- Rule 37.

Filing 215 at 11–12.

Defendants' Reply focuses on the issue of post-judgment interest raised in the Estate's and LRC's responses. Defendants assert that based on the law and the Estate's own doing, the

Estate is not entitled to post-judgment interest. Filing 216 at 1. Defendants argue that despite Plaintiff's counsel standing alone in the way of Defendants making payment on the settlement, the Estate now demands interest for the period of the delay caused by its counsel's own inaction. Filing 216 at 1.

More specifically, Defendants argue that the settlement is not a "judgment" that accrues post-judgment interest under 28 U.S.C. § 1961. Filing 216 at 1. Defendants explain that the statute applies to money judgments recovered in United States District Court, but it says nothing about settlements or post-settlement interest. Filing 216 at 1–2. Defendants argue that while the Court eventually reduced the order compelling settlement to a "judgment," it was a "judgment" in title only, and a settlement ordinarily does not permit interest unless the terms of the settlement so state. Filing 216 at 3.

In the alternative, Defendants argue that the Estate should be estopped from collecting interest because of its counsel's conduct. Filing 216 at 3. Defendants argue that an unconditional payment of a debt in full will generally stop interest from accruing. Filing 216 at 3. Similarly, Defendants argue that where a judgment debtor unconditionally tenders its payment, the rationale for post-judgment interest—protecting the judgment creditor from nonpayment of a liquidated claim—no longer exists. Filing 216 at 3–4. Defendants point out that other courts have determined that any delay in payment resulting from the judgment creditor's conduct relieved the judgment debtor from the obligation to pay additional post-judgment interest. Filing 216 at 4. Here, Defendants argue, the Estate should not be permitted to profit from its self-induced delay in accepting Defendants' attempts to make payment of the settlement funds and delaying state probate court approval of the settlement. Filing 216 at 4. Defendants also dispute the Estate's

calculations of the rate for any post-judgment interest, if such interest is somehow due. Filing 216 at 5–6.

## II. LEGAL ANALYSIS

### A. The Funds to be Deposited

The fighting issue on the Motion now before the Court is whether the $5 million in settlement funds is the entire sum that Defendants must deposit in satisfaction of the settlement, as Defendants argue, or whether the sum at issue includes post-settlement or post-judgment interest, as the Estate and LRC contend. The Court turns to that question below. However, before considering the question of whether post-settlement or post-judgment interest is available in this case, the Court addresses the suggestions by the Estate and LRC that this Court should not address the question now or should not address it in the first instance. The Court rejects both suggestions.

### 1. *The Court Can Determine Now Whether Post-Judgment Interest Is Available*

As mentioned above, LRC argues, "Given that the Defendants have not argued or established that post-judgment interest is not accruing as part of the pending motion, LRC respectfully suggests that the availability of post-judgment interest be addressed in due course, following the entry of the Eighth Circuit's mandate." Filing 214 at 4. In the Court's view, LRC puts the shoe on the wrong foot. The Estate and LRC raised the issue of an alleged entitlement to post-judgment interest in response to Defendants' Motion to Deposit Funds. Thus, as the parties seeking to recover more than the settlement funds, the Estate and LRC must establish that they are entitled to post-judgment interest. Now is the time for the Estate and LRC to make that showing, so that the issue could also be addressed on the appeal of the order compelling settlement. LRC offers no compelling reason why this Court should not determine the

availability of post-judgment interest at this time and should instead wait until the Eighth Circuit issues its mandate.

There is also no compelling reason why the Court of Appeals should address post-judgment interest in the first instance, as the Estate argues. Filing 215 at 12 ("Any decisions on the judgment and/or interest and/or how it gets divided would be directed by the Court of Appeals under at least FRAP – Rule 37."). Federal Rule of Appellate Procedure 37(a) on which the Estate relies provides that if the Court of Appeals affirms a district court's money judgment, "whatever interest is allowed by law is payable from the date when the district court's judgment was entered." Fed. R. App. P. 37(a). In contrast, Rule 37(b) addresses post-judgment interest if the Court of Appeals reverses. Fed. R. App. P. 37(b). It states, "If the court modifies or reverses a judgment with a direction that a money judgment be entered in the district court, the mandate must contain instructions about the allowance of interest." *Id.* Thus, Rule 37 does not provide or suggest that the Court of Appeals rather than the district court should determine in the first instance whether or not post-judgment interest should be imposed.

Therefore, the Court turns to the question of whether the Estate and LRC are entitled to post-settlement or post-judgment interest. The Court begins its analysis of that question with a discussion of the statute on which both the Estate and LRC rely as the basis for obtaining post-judgment interest on the settlement.

### 2.    *Standards for Post-Judgment Interest*

The Estate and LRC both cite 28 U.S.C. § 1961(a) as the authority to recover post-judgment interest.[1] Section 1961(a) states in pertinent part, "Interest shall be allowed on any

---

[1] The Estate suggests that "there is some question that Nebraska law would apply to this judgment interest," specifically pointing to Neb. Rev. Stat. § 45-103. Filing 213 at 5. In support of this contention, the Estate cites *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 193 (1995), and *Bartholomew v. CNG Producing*

money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990) (quoting *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1280 (3rd Cir. 1987)). The Eighth Circuit has recognized further that an award of post-judgment interest removes "an artificial and undesirable incentive to appeal or otherwise delay payment" by a judgment debtor. *Jenkins by Agyei v. State of Mo.*, 931 F.2d 1273, 1276 (8th Cir. 1991) (quoting *R.W.T. v. Dalton*, 712 F.2d 1225, 1234–35 (8th Cir. 1983)); *see also id.* (citing *Mathis v. Spears*, 857 F.2d 749, 760 (Fed. Cir. 1988), for the statement, "The provision for calculating interest from entry of judgment deters use of the appellate process by the judgment debtor solely as a means of prolonging its free use of money owed the judgment creditor.").

The Eighth Circuit Court of Appeals has stated,

[W]e have already held that "a failure to request postjudgment interest is not fatal to a prevailing party's entitlement to such interest," because "[p]ostjudgment interest is mandatory under 28 U.S.C. § 1961 ... and should therefore be awarded" regardless of whether the district court orders it. *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh*, 735 F.3d 993, 1007-08 (8th Cir. 2013); *Hillside Enters. v. Carlisle Corp.*, 69 F.3d 1410, 1416 (8th Cir. 1995) (affirming award of post-judgment interest although it was not requested).

*Contitech USA, Inc. v. McLaughlin Freight Servs., Inc.*, 91 F.4th 908, 914–15 (8th Cir.), *cert. denied sub nom. McLaughlin Freight Servs., Inc. v. Conti-Tech USA, Inc.*, 145 S. Ct. 157 (2024). However, the fact that post-judgment interest is "mandatory" under § 1961(a) in the

---

*Co.*, 832 F .2d 326, 330 (5th Cir. 1987). However, both cases address pre-judgment interest under state law, while *Bartholomew* found no error in awarding pre-judgment interest pursuant to state law and post-judgment interest pursuant to federal law. 832 F.2d at 331; *see also ResCap Liquidating Tr. v. Primary Residential Mortg., Inc.*, 59 F.4th 905, 922 (8th Cir. 2023) ("We have often said that 'federal law governs the award of postjudgment interest ... while state law governs the award of prejudgment interest.'" (quoting *Weitz Co., Inc. v. Mo-Kan Carpet, Inc.*, 723 F.2d 1382, 1385 (8th Cir. 1983))). Thus, the only basis for post-judgment interest, if any, is § 1961(a).

circumstances set out in the statute does not mean that post-judgment interest under § 1961(a) is available in every case.

### 3.    Section 1961(a) Does Not Apply to the Settlement in this Case

By its plain terms, § 1961(a) allows post-judgment interest "on [1] any money judgment [2] in a civil case [3] recovered in a district court." 28 U.S.C. § 1961(a) (bracketed numbers inserted). The statute does not define "any money judgment," and the Eighth Circuit's only forays into construction of the term concluded that the term "is construed as including a judgment awarding attorneys' fees." *Jenkins*, 931 F.2d at 1275 (citing *Dalton*, 712 F.2d at 1234); *see also El-Tabech v. Clarke*, 616 F.3d 834, 841 n.2 (8th Cir. 2010) (quoting *Jenkins*, 931 F.2d at 1275). District courts in this circuit have gone no further. Other Circuit Courts of Appeals have gone only slightly further. *See Van Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1092 (9th Cir. 2014) ("We have 'construe[d] the language of section 1961 to be mandatory in cases awarding post judgment interest,' including cases seeking back pay.").[2]

On the other hand, as Defendants point out, the federal district courts provide some guidance, as summarized in *Reynolds v. Alabama Dep't of Transp.*, No. 285CV665-MHT, 2006 WL 3063463 (M.D. Ala. Oct. 27, 2006):

> [Section] 1961 does not apply to settlements. Although the case law on this point is sparse, the only cases the court has found on point all hold that § 1961 does not apply to settlements approved by the court. *In re Ivan Boesky Securities Litigation*, 913 F.Supp. 256, 260 (S.D.N.Y.1996); *Kincaide v. General Tire and Rubber Co.*, 540 F.Supp. 115 (W.D.Tex.1982), *rev'd on other grounds*, 716 F.2d 319 (5th Cir.1983); *In re Connaught Properties*, 176 B.R. 678, 685 (Bankr.D.Conn.1995). *Kincaide* is representative and provides a concise explanation, based on principles of statutory construction, of why this is so:

---

[2] Several Circuit Courts of Appeals have addressed the question of whether an order that determines an entitlement to a monetary award, such as attorney's fees, or an order that quantifies the amount of the award, starts the accrual of post-judgment interest. *See Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482 (6th Cir. 2001) (discussing these Circuit decisions). That question would only arise here if the order compelling settlement is a "money judgment."

> "[Section 1961] extends only to 'money judgments' that are 'recovered' in a district court. Although court-approved settlement agreements may often involve the payment of money, court-approved settlement agreements, though reduced to judgment in some cases, represent not the court's own judgment or that of a jury, but rather the parties' compromise of the lawsuit put in writing. Nor can an amount of money paid according to the terms of a court-approved settlement agreement reasonably be considered to have been 'recovered' in a district court, since no adjudication of the suit culminating in recovery occurs in a settlement situation. In sum, it is this Court's view that § 1961 is intended to allow postjudgment interest on money awarded by a judge or jury after litigation. Thus, the Court holds that § 1961 was not intended to apply and will not be interpreted to extend to court-approved settlement agreements."

540 F.Supp. at 121. The court finds this reasoning persuasive, and the defendants have offered no compelling reason to conclude otherwise.

*Reynolds*, 2006 WL 3063463, at *1–2. This Court also finds this reasoning persuasive.

Following *Reynolds* and *Kincaid*, neither the Court's October 26, 2023, Memorandum and Order finding Defendants' proffered settlement fair and reasonable, Filing 174, nor its February 28, 2024, Memorandum and Order determining the distribution of settlement funds, Filing 190, was a "money judgment" within the meaning of § 1961. Those Orders, even if reduced to judgment, Filing 191, "represent not the court's own judgment or that of a jury, but rather the parties' [proffered] compromise of the lawsuit put in writing." *Kincaid*, 540 F. Supp. at 121. The Court's determination that the proffered compromise was "fair and reasonable"—as authorized by Nebraska Revised Statute § 48-118.04(1)(b)—did not convert the settlement into an award by the Court or a jury based on the evidence supporting the underlying claim. *Id.* Although the Court considered whether a jury might have awarded more or less based on the evidence, that determination was not to make an award based on the evidence, but only to determine the "reasonableness" and "fairness" of the settlement. *See* Filing 174 at 8–9 (noting that a settlement could be fair and reasonable under Nebraska case law even if the possible

damages ranged between zero and several million dollars). "Nor can an amount of money paid according to the terms of a court-approved [or court-compelled] settlement agreement reasonably be considered to have been 'recovered' in a district court, since no adjudication of the suit culminating in recovery occurs in a settlement situation." *Kincaid*, 540 F. Supp. at 121.

More guidance on how to determine whether or not something was a "money judgment" in the context of § 1961 comes from the Third Circuit Court of Appeals, which observed,

> Section 1961 does not define the term "money judgment." Nevertheless, if a statute uses a legal term of art, we must "presume Congress intended to adopt the term's ordinary legal meaning." *Omnipoint Corp. v. Zoning Hearing Bd.*, 181 F.3d 403, 407 (3d Cir.1999) (citing *McDermott Intern. Inc. v. Wilander*, 498 U.S. 337, 342, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)); *see also Zubi v. AT&T Corp.*, 219 F.3d 220, 227 (3d Cir.2000) (Alito, J., dissenting) (citing, *inter alia*, *Omnipoint*, 181 F.3d at 407, and Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L.Rev. 527, 537 (1947)) ("[I]f a word is obviously transported from another legal source, whether the common law or other legislation, it brings its soil with it.").

*Eaves v. Cnty. of Cape May*, 239 F.3d 527, 532–33 (3d Cir. 2001).[3] Thus, the Court looks to the common meaning of "money judgment."

BLACK'S LAW DICTIONARY defines a "money judgment" as "[a] judgment for damages subject to immediate execution, as distinguished from equitable or injunctive relief.—Also termed *judgment for money*." BLACK'S LAW DICTIONARY (11th ed) 1009 (emphasis in the original). A court-approved or court-compelled settlement is not a judgment for damages on an underlying claim. It is instead a determination that a sum offered to compromise a claim is fair and reasonable, *i.e.*, it grants equitable relief. *See* Filing 174 at 13–14 (observing that the determination to compel a settlement under the Nebraska statute is likely "equitable in nature" as

---

[3] This Court can embrace the Third Circuit's observation in *Eaves* on how to determine what § 1961(a) means by "money judgment" without necessarily embracing the conclusion that the Third Circuit came to in the case before it. *See Drabik*, 250 F.3d 482 (criticizing the conclusion in *Eaves* but not commenting on the guidance of how to make the determination).

it involves "relief unavailable at law"). Similarly, Neb. Rev. Stat. § 48-118.04(2) expressly provides for the court to "order a fair and equitable distribution of the proceeds of any judgment or settlement" if the employee (or his representative) or his employer does not agree in writing to the distribution of proceeds of a settlement compelled under Neb. Rev. Stat. § 48-118.04(1)(b).

Finally, the reasons for allowing post-judgment interest on a money judgment do not apply here. This is not a case in which a successful plaintiff needs to be compensated for the loss from the time between the settlement and the payment by the defendant. *See Bonjorno*, 494 U.S. at 835–36 ("[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." (quoting *Poleto*, 826 F.2d at 1280)). Rather, it is the Estate (and LRC) seeking a windfall in the form of post-settlement interest above and beyond the terms of the settlement as the result of the Estate's own delay in accepting payment from Defendants. In this case, it is the Estate and LRC that are arguably acting on an undesirable incentive to delay payment. *Jenkins*, 931 F.2d at 1276 (recognizing that an award of post-judgment interest removes "an artificial and undesirable incentive to appeal or otherwise delay payment" by a judgment debtor (quoting *Dalton*, 712 F.2d at 1234–35)).

The Estate and LRC are not entitled to post-judgment interest pursuant to § 1961(a). Thus, the entirety of the funds at issue in this case is the $5 million settlement.

### 4. In the Alternative, the Estate is Estopped from Seeking Post-Judgment Interest by Defendants' Unconditional Offer of Payment

The conclusion just above is fully dispositive of the issue of the availability of post-judgment or post-settlement interest in this case. Nevertheless, if § 1961(a) is applicable, the Court will consider briefly Defendants' alternative argument that the Estate is estopped from

15

collecting post-judgment or post-settlement interest because of its counsel's conduct in repeatedly delaying acceptance of the payment of settlement funds. Filing 216 at 3.

The Court begins by observing that if § 1961(a) is applicable to the settlement in this case, the Estate could not be estopped to claim post-judgment interest by the Estate's failure to request post-judgment interest earlier in the proceedings. As the Eighth Circuit explained, "[A] failure to request postjudgment interest is not fatal to a prevailing party's entitlement to such interest," if § 1961 is applicable, because post-judgment interest would then be "mandatory . . . and should therefore be awarded regardless of whether the district court orders it." *Contitech USA, Inc.*, 91 F.4th at 914–15 (internal quotation marks and citation omitted).

However, even if § 1961(a) is applicable, the Estate is estopped to claim post-judgment interest by its delay in accepting payment of the settlement funds from Defendants. As Defendants point out, some time ago, the Sixth Circuit Court of Appeals stated,

> [T]he Fifth Circuit has interpreted § 1961 to mean that "[i]n order to stop the accrual of interest [the defendant] had to make the money available to [the plaintiff] without attempting to impose conditions on its acceptance." *United States ex rel. Garrett v. Midwest Constr. Co.*, 619 F.2d 349, 354 (5th Cir.1980). Outside the context of § 1961, "it is a general rule that interest will not accrue after a valid tender." *Bogosian v. Woloohojian*, 158 F.3d 1, 9 (1st Cir.1998). Finally, as we explained in *Caffey [v. UNUM Life Ins. Co.*, 302 F.3d 576 (6th Cir. 2002)], the primary purpose of post-judgment interest is to compensate plaintiffs for the lost use of payments due and to discourage unnecessary delay in making payment. 302 F.3d at 590. As the district court below reasoned, once a defendant unconditionally tenders payment, the rationale for imposing post-judgment interest no longer applies.

*BP Expl. & Oil Co. v. Maint. Servs., Inc.*, 313 F.3d 936, 948 (6th Cir. 2002). The Estate has not disputed the Defendants' contention that their counsel sought information from the Estate's counsel in order to make payment of the settlement funds the day after the Court compelled the settlement. Filing 212-1 at 2 (¶ 7) (citing Filing 212-1 at 4). Likewise, the Estate has not asserted that Defendants ever imposed any conditions on acceptance of the settlement funds. *See BP Expl.*

*& Oil Co.*, 313 F.3d at 948 (citing *Garrett*, 619 F.2d at 354). The Estate's counsel's repeated failures to provide information necessary to make payment and repeated delays in jumping through "hoops" to effect settlement strongly suggest an intent to delay and obstruct payment of the settlement. In these circumstances, even if the settlement is subject to post-judgment interest pursuant to § 1961(a), no such interest ever accrued where Defendants made an immediate unconditional offer of payment of the settlement funds and the sole cause of the delay in payment was the dilatory conduct of the Estate's counsel.

For this further reason, the Estate and LRC are not entitled to post-judgment or post-settlement interest. Thus, the sum required to satisfy the settlement is the $5 million in settlement funds that Defendants have been and are ready, willing, and able to pay.

### B. Requirements for Deposit of Funds

Having determined what funds must be deposited to satisfy the settlement, the Court can turn to the question of the standards for depositing funds into the Court's registry. Defendants have filed their Motion for Leave to Deposit Settlement Funds pursuant to Federal Rule of Civil Procedure 67 and NECivR 58.1(c).

### 1.    *Application of Rule 67*

Federal Rule of Civil Procedure 67 provides as follows:

**(a) Depositing Property.** If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party--on notice to every other party and by leave of court--may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

**(b) Investing and Withdrawing Funds.** Money paid into court under this rule must be deposited and withdrawn in accordance with 28 U.S.C. §§ 2041 and 2042 and any like statute. The money must be deposited in an interest-bearing account or invested in a court-approved, interest-bearing instrument.

Fed. R. Civ. P. 67. The Eighth Circuit Court of Appeals has not provided guidance on the requirements of Rule 67. *See, e.g., LTV Corp. v. Gulf States Steel, Inc. of Alabama*, 969 F.2d 1050, 1062–63 (D.C. Cir. 1992) ("We have found very few cases construing Rule 67." (citing 12 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2991 (1973), as agreeing with the prediction that there would not be "very many occasions for the application of this rule"). Nevertheless, it is clear that "the relief sought" is "the disposition of a sum of money," specifically, the settlement funds; that all parties have notice; so that the settlement funds "may [be] deposit[ed] with the court . . . whether or not [Defendants] claim any of it." *See* Fed. R. Civ. P. 67(a).

The Court has also looked to decisions of other Circuit Courts of Appeals and district courts for guidance. The Second Circuit Court of Appeals has explained,

> "The Rule 67 procedure provides a place of safekeeping for disputed funds pending the resolution of a legal dispute, but it cannot be used as a means of altering the contractual relationships and legal duties of the parties." *LTV Corp. v. Gulf States Steel, Inc. of Ala*., 969 F.2d 1050, 1063 (D.C. Cir. 1992); *see also Alstom Caribe, Inc. v. George P. Reintjes Co*., 484 F.3d 106, 113 (1st Cir. 2007) ("The core purpose of Rule 67 is to relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitlement thereto."). Indeed, on its face, Rule 67 "is just a procedural mechanism that allows a party to use the court as an escrow agent*." Fulton Dental[, LLC v. Bisco, Inc.]*, 860 F.3d [541,] 544 [(7th Cir. 2017)]. It does not itself determine who is entitled to the money.
>
> Rule 67 explicitly permits a party to deposit money "whether or not that party claims any of it" and directs that the funds be held in accordance with other statutory provisions, Fed. R. Civ. P. 67, including those that require the funds to be "deposited ... in the name and to the credit of [the] court" and that permit their withdrawal only "by order of court," 28 U.S.C. §§ 2041, 2042. These provisions make clear that a party's deposit of funds with the court does not entitle another party to collect those funds.
>
> In short, the Rule 67 procedure "is nothing like a bank account in the plaintiff's name—that is, an account in which the plaintiff has a right at any time to withdraw funds." *Fulton Dental*, 860 F.3d at 545; *cf. Campbell-Ewald [Co. v. Gomez]*, [577 U.S. 153, 166,] 136 S.Ct. [633,] 672 [(2016)] (leaving open

hypothetical where defendant deposits full amount "*in an account payable to plaintiff*" (emphasis added)).

*Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 541–42 (2d Cir. 2018); *Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 545 (7th Cir. 2017) ("What Rule 67 is *not* is a vehicle for determining ownership; that is what the underlying litigation is for." (emphasis in the original)). Thus, the Court must of course adhere to the requirements of Rule 67(b)—which include by reference the requirements of 28 U.S.C. §§ 2041 and 2042—for investing and withdrawing the settlement funds, which parallel conditions LRC expressly requested be placed on the deposited funds. Filing 214 at 3.

"The decision whether to allow a Rule 67 deposit generally lies within the discretion of the district court." *LTV Corp.*, 969 F.2d at 1063 (citing *Gulf States Utilities Co. v. Alabama Power Co.*, 824 F.2d 1465, 1475 (5th Cir.), *modified on other grounds*, 831 F.2d 557 (5th Cir. 1987), and *In re Dep't of Energy Stripper Well Exemption Litig.*, 124 F.R.D. 217, 220 (D. Kan. 1989)). However, the deposit of funds into the Court pursuant to Rule 67 may not be appropriate if the funds at issue are not subject to competing claims. *See Reliance Tel. of Grand Forks Inc. v. O'Brien Cnty., Iowa*, No. 22-CV-4055 CJW-MAR, 2023 WL 3778715, at *2 (N.D. Iowa May 4, 2023) (citing *Tegtmeier v. PJ Iowa, L.C.*, 189 F. Supp. 3d 811, 825 (S.D. Iowa 2016)). Here, the settlement funds are subject to competing claims at least as between the Estate and LRC. *Id.* In the exercise of its discretion, the Court concludes that it should allow the settlement funds to be deposited pursuant to Rule 67, where the Estate has thus far impeded and delayed the payment of those funds.

### 2.    Application of NECivR 58.1(c)

The local rule cited by Defendants as a basis for their Motion provides, "The clerk notes satisfaction of a judgment on the docket sheet when [*inter alia*] (c) the judgment is paid into the

registry account of the court, but the payment may only be made after an order of the court authorizes the payment." NECivR 58.1(c). As LRC argues, Defendants' citation of this rule suggests that Defendants anticipate that depositing the settlement funds with the Court would constitute a full satisfaction of the underlying "judgment," *i.e.*, the settlement. Filing 214 at 4. However, contrary to LRC's argument, a determination that the settlement payment constitutes a full satisfaction of the settlement is proper where the Court has determined that no post-judgment or post-settlement interest is allowed on the settlement. *See Zelaya/Cap. Int'l Judgment, LLC v. Zelaya*, 769 F.3d 1296, 1303 (11th Cir. 2014) ("The federal courts . . . have overwhelmingly held that post judgment statutory interest stops accruing once the disputed funds are deposited into the court's registry." (citing *Cordero v. Jesus–Mendez*, 922 F.2d 11, 18–19 (1st Cir.1990))).

   *3.   LRC's Remaining Conditions*

As mentioned in § I.B. above, LRC asks the Court to impose certain conditions on the deposit of the settlement funds. The requests not yet resolved are, first, that the Court specify that the funds will be held pending the resolution of the pending appeal to the Eighth Circuit Court of Appeals and, second, that the interest accrued on the deposited funds be divided in proportion to the parties' respective interests in the principal once the Eighth Circuit issues its mandate. Filing 214 at 3. These conditions are consistent with Rule 67 and the circumstances of this case.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Defendants' Motion for Leave to Deposit Settlement Funds into the Court, Filing 212, is granted.

IT IS FURTHER ORDERED that

1.     Defendants shall deposit the $5,000,000 settlement funds into the Court pursuant to Federal Rule of Civil Procedure 67(a) and Defendants shall deliver to the Clerk of Court a copy of this order permitting deposit.

2.     After the payment of the settlement funds into the registry account of the Court, the Clerk of Court shall enter satisfaction of the settlement on the docket pursuant to NECivR 58.1(c).

3.     Pursuant to Federal Rule of Civil Procedure 67(b), the settlement funds shall be deposited and withdrawn in accordance with 28 U.S.C. §§ 2041 and 2042 and any like statute, and the settlement funds shall be deposited in an interest-bearing account or invested in a court-approved, interest-bearing instrument.

4.     The settlement funds shall be held pending the resolution of the pending appeal to the United States Court of Appeals for the Eighth Circuit. Upon receipt of the Eighth Circuit's mandate, the funds will be distributed to the party or parties entitled to those funds, as their interests may appear.

5.     The interest accrued on the deposited settlement funds will be divided proportionally to the parties' respective interests in the judgment principal once the Eighth Circuit's mandate issues.

Dated this 28th day of February, 2025.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge